## SUPREME COURT—IN BANCO.

## JULY TERM—1869.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

## THE KING *vs.* HENRY CORNWELL.

CIRCUIT courts cannot grant NEW TRIALS in CRIMINAL CASES, but the SUPREME COURT can.

The King *v.* Henry Cornwell.

VERDICT will not be set aside for CONFLICTING EVIDENCE.

At a trial for a NUISANCE an EX-PARTE order for an INJUNCTION against its removal is no evidence to justify it, but the fact that the defendant obtained such order is conclusive evidence that he was then maintaining the nuisance.

INSTRUCTIONS need be given in the form requested, if as given they correctly state the law.

PUBLIC DEDICATION of way may be inferred by PUBLIC USER unopposed and acquiesced in for twenty years.

NON-USER is a fact tending to rebut a PRESUMPTION of dedication by user.

After a long lapse of time, the Court will presume that the authorities in laying out a highway, complied with all the legal requisites if the principal requisites are shown to have been complied with, and there is no evidence to rebut such presumption.

In a GENERAL VERDICT of guilty, the LOWEST DEGREE of the offence will be PRESUMED.

If no PANEL be legally summoned, a tales cannot be ordered under Section 1199, Civil Code.

Complaint under Chapter 37, Penal Code, for levying a common nuisance by obstructing a certain public highway upon the Island of Maui, by erecting or maintaining fences across the said highway.

At the trial before the Circuit Court at Lahaina, at the last June Term, the jury rendered a verdict of guilty. The defendant's exceptions are set forth in the opinion of the Court.

HARTWELL, J. : We will first consider whether the Circuit Court properly declined to entertain the defendant's motion for a new trial. This question arises now for the first time, although the jurisdiction seems to have been conceded by the practice of the Circuit Courts in hearing, and uniformly overruling, such motions, on which the Appellate Court finally passes.

The English and American rules differ in regard to new trials. It is the rule in England, never to grant a new trial, on the merits, in cases of felony, and that in no case has an inferior Court this power, unless for irregularities. The

remedy was by appeal to executive clemency. [The King *vs.* Mawbrey, 6 Term, 638 ; Same *vs.* Oxford, 16.East., 411 ; Blacquire *vs.* Hawkins, Doug., 380 ; Rex *vs.* Peters, 1 Bur., 572 ; Rex *vs.* Whitehouse, 18 E. L. & E., 105.] It is generally held, in the United States, that the Courts have the right to grant new trials in any case, civil or criminal, by virtue either of express statutes, general jurisdiction, or Constitutional law. [2 Bennett & Heard's Lead. Cr. Cas., 464.]

The Constitution of this Kingdom provides that "no person shall be subject to punishment for any offense, except on due and legal conviction thereof, in a Court having jurisdiction of the case ;" Art. 6. This Court has, under the Statutes, "the general superintendence of all Courts of inferior jurisdiction, to prevent and correct errors and abuses therein, where no other remedy is expressly provided by law." Section 830, Civil Code. Section 1156, *Ib.*, provides for motions for new trials, without restrictions as to the Court in which they may be heard ; but reference to the previous section shows that civil cases only are thus provided for. By Section 1184, *Ib.* : "In all criminal cases, where the punishment is less than capital, the Court before whom the conviction is had shall proceed, as soon thereafter as may be, to pass sentence." This section is to be construed with Section 1177, *Ib.*, which allows sentences to be respited, on the granting of motions in arrest of judgment, and stay of execution for cause. This Court has never hesitated to grant new trials whenever it appeared that the accused did not have a fair and legal trial, according to the laws of the land. But this right in criminal cases is not expressly granted to the Circuit Courts, although their jurisdiction is precisely and fully defined in the Statutes. It was argued that the Circuit Courts have general and unlimited jurisdiction in cases cognizable before them, and that this power is to be regarded as inherent in their general powers, and as essential to the furtherance of justice. But as a new trial can be obtained in

The King *v.* Henry Cornwell.

this Court, it is unnecessary that the Circuit Court should assume a power not granted. There are reasons why this power, in criminal cases, is confined to the Supreme Court. The rule in civil cases requires that a verdict be given to the side on which the evidence preponderates, but in criminal cases, the evidence should present and admit no reasonable explanation of the offense other than the prisoner's guilt: in the latter class of cases, the appellate court can easily determine whether the evidence supports the verdict. No exception, it is held, lies in favor of the prosecution. The public, then, in consequence of this want of mutuality, are the more interested that verdicts be set aside only upon well-ascertained and uniform principles of law, and after mature deliberation. Neither Court nor counsel, at the circuit can refer largely to legal authorities, and the public interests would suffer by a variety of rules and hastily formed decisions in granting new trials. Nor can the accused suffer in bringing his exceptions here, after any temporary excitement against him has had time to subside, and after his counsel have had time to prepare their briefs. The Courts, in their rulings at the trial, will be none the less cautious to avoid errors, from the knowledge that they can not order a second trial.

Under Section 836, Civil Code, as always construed, the defendant may bring to this Court his exceptions to all the rulings of the Circuit Court, whether upon points made during the trial, or subsequently, including refusals to arrest judgment for error apparent on the record, or to stay execution for cause. In deciding upon the exceptions, the Court may pass sentence, remand for sentence or execution, or for new trial, or acquit. [Com. *vs.* Peck, 1 Met., 428.] The ruling of the Circuit Court, declining jurisdiction, is accordingly affirmed.

When the evidence for the prosecution was closed, the defendant's counsel moved the Court to instruct the jury to acquit, on the grounds, 1. That the allegation in the com-

plaint is not sustained by proof. 2. That there is no proof of a dedication of the road in question. 3. Because the only fence that defendant erected was the wire fence on the Nowline land, which he had a right to erect. 4. Because the obstructions in the road are maintained under an injunction from the Chancellor of the Kingdom.

It is impossible for this Court to decide whether there was legal evidence to show a dedication of the land for a public road, as the Bill recites only that portion of the evidence referring to the ownership of the land, the location of the road, and to the injunction. By the evidence reported, it seems that several witnesses, when asked to name all the land owners, did not name Nowline, but that a native witness said that the road went "onto" Nowline's land, and some discussion arising as to what this witness actually said in Hawaiian, the Court left it to the jury; and that Mr. Alexander testified that the land, "where it enters the Wailuku road, belonged to Nowline, and is now owned by Mr. Cornwell." We think, on this evidence, and under the instructions, hereafter to be referred to, this matter was properly left to the jury.

The order of injunction referred to in the instructions prayed for, was issued March 23, 1866, by the Chancellor of the Kingdom, enjoining Thomas W. Everett and his agents, etc., from interfering in any manner with the fences now claimed by the prosecution to be an illegal obstruction to the highway, and referred to in the said order as the defendant's property. The restraining order, citing said Everett to show cause why the injunction should not be made perpetual, was read at the trial. The defendant's sworn bill for this injunction was attached, and the fact that it was attached was in evidence, but the bill was not read to the jury. This order, obtained as such orders usually are, upon an *ex parte* hearing, was no justification of the defendant's own action in regard to the fences, and was no authority for him to continue to

The King *v.* Henry Cornwell.

maintain them as a nuisance. No such mode of legalizing a nuisance was ever heard of, or can for a moment be admitted.

When the testimony was all in, the defendant's counsel requested the Court to give to the jury the following instructions, which were given, but with the modifications as set forth:

1. "That unless they find upon the evidence that the road in question was legally laid out and opened, and the land over which it runs was dedicated by the owners, Manu, Humphreys, Crowningburg, and Nowline, for the use of the public, they will find the defendant not guilty;" modified by the Court, "with the laws as laid down in Greenleaf on Ev., upon presumptions of fact as to regularity of proceedings," &c.

2. "That unless they find from the evidence, that the owners of the land over which the road runs, dedicated, by some clear and manifest act, without the intention of reclaiming it, they will find the defendant not guilty;" modified by the Court, "but knowledge of, or acquiescence in public user, if continued for a sufficiently long time, would be evidence to show such intention to dedicate."

3. "That unless they believe from the evidence, that Nowline consented to the road running over his land, then as Cornwell had the right to place the wire fence on said land which he purchased of Nowline, on the Wailuku road, they will find the defendant not guilty;" modified by the Court, "provided they find that the road actually went over Nowline's land."

4. "That if they find from the evidence, that the fences are now maintained by a restraining order or temporary injunction from the Chancellor of the Kingdom, then it is not the act of the defendant, and they will find him not guilty;" modified by the Court, "unless they find that since Everett took down (or put up) the fences, the defendant has actually erected, kept up or maintained them himself."

5. "That the dedication of a road to the public over waste and unenclosed lands, ought not to be inferred from bare user alone. Therefore, unless they believe from the evidence, that there was an express or implied dedication of the road by the owners of the land, including Manu, Humphreys, Crowningburg and Nowline, they will find defendant not guilty."

6. "That the acts of Crowningburg, Humphreys, and the owner of the land in Waikapu, by the erection of fences or the placing of gates over and on the road, are circumstances to rebut the presumption of dedication;" modified by the Court, "unless they find that the land was actually dedicated for a road before those acts."

7. "That the failure to work on and keep the road in repair, by the proper authorities, and the authorities not requiring a removal of the obstructions, are circumstances going to disprove the presumption of dedication;" modified by the Court, "if resting on dedication alone."

8. "If the jury entertain a reasonable doubt of the guilt of the defendant, they will give him the benefit of that doubt, and find him not guilty."

Exception was also taken to the instruction given by the Court, "that if the jury considered in evidence, the sworn bill for injunction of defendant against Everett and others, it was conclusive as to the fact of erecting and maintaining the fences, the nuisance complained of, up to the time of obtaining said injuction."

It was argued that the instructions should have been given in the form as prayed for, and not with such modifications and further instructions as would destroy the effect sought. But such is not the law. The question is, did the instructions as given, when compared together, correctly state the law upon the subject ? Adams *vs.* Nantucket, 11 Allen, 203.

The instruction given in regard to the force of the defendant's act in obtaining an injunction, was correct. The

defendant now insists upon his legal right to continue these very fences by virtue of his ownership of all the land over which the road runs, and which he claims was never legally dedicated for the purpose of a public highway. His defence is, "I have not erected or maintained these fences,—if I have, I have a right to do so." This defence is correct by our rules of pleading, but no Court, on failure to sustain a plea in justification, would allow the defence of general denial. When the defendant prayed for an injunction, he claimed his legal right to have the fences kept in their then condition, and presented his claim in as solemn form as he could. Of course, he is not held answerable for whatever Everett may have done in the premises, and the jury were rightly told to acquit unless the defendant had maintained the fences since Everett's action concerning them.

The law of dedication by long continued public user, with the knowledge and acquiescence of the owner of the land; that land once legally dedicated to the public is beyond the owner's control, and that non-user on the part of the public destroys only that kind of presumption of dedication which is based upon public user, was correctly laid down by the Court, in their instructions. Angell on Highways, (s. 142, *et seq;*) Washburn's Easements and Servitudes, (*ed.* 1867) Section 5.

"As all that is requisite to constitute a good dedication is, that there should be an intention and an act of dedication on the part of the owner, and an acceptance on the part of the public, as soon as these concur, the dedication is complete. Ordinarily, there is no other mode of showing an acceptance by the public of a dedication than by its being made use of by them, and this must be sufficiently long to evince such acceptance, depending of course upon the circumstances of each case, * * and in no case, has the time been measured by that required to create a prescription. * * When the dedication is accepted, it takes effect and the owner of

the soil is thenceforward excluded from asserting his ancient rights." (*Ib.* p. 188.)

If public user be the *only* evidence of dedication, it must continue for a much larger period; what that period should be, has never been definitely settled here. In 1856 this Court, in Rooke *vs.* Nicholson, 1, Haw. 288, expressed the view that the uninterrupted use of a way from the time of the organization of the Government in 1846, would establish a right by prescription. "Sufficient time has now elapsed under the present form of government to warrant us in adopting the general rule in England and the United States, of twenty years. This 'rule is the more applicable here, where roads often run through waste or unenclosed lands. We must presume thát there was evidence in this case to sustain the verdict in regard to dedication, either by sufficient lapse of time or by express acts, although we are not informed what that evidence was."

A motion in arrest of judgment, was also made by the defendant's counsel, on the following grounds:

1. That the defendant was not found guilty of any offence in the law.

2. That the verdict is contrary to Section 8, Chapter 37, Penal Code.

3. That the verdict is so imperfect and defective, that no judgment can be given upon it.

The section in the Penal Code referred to, is as follows: "The offence of common nuisance is of two degrees, and the degree is to be found by the jury, or determined by the Court or magistrate authorized to decide on the facts; and so also, the degree is to be determined by the Court before which proceedings are had, where the facts charged are admitted by plea or otherwise."

This motion was overruled, and the Court sentenced the defendant to pay a fine of twenty-five dollars, which is within the penalty provided (in Section 10,) for the second degree.

The original complaint was brought generally, under Chapter 37. In that chapter, the offence of a common nuisance is defined, and certain specified acts are declared to constitute the offence. The object of determining the degree is solely to fix the penalty within certain limits. The defendant suffered nothing by receiving judgment for the lowest degree.

No objection to the form of the verdict was made at the time it was rendered, when the jury might have amended, by inserting the degree. The finding of the jury is, that the defendant's acts are a common nuisance, but they do not specify its degree. A verdict is bad, which finds only part of the issue, and if so imperfect that no judgment can be given, it must be set aside. "But if the matter and substance of the issue be found, it is sufficient." 1 Inst. 227.

In Foster *vs.* Jackson, Hobart, 54, it is laid down, that "howsoever the verdict seem to stray and conclude, not formally or punctually unto the issue, so as you cannot find the words of the issue in the verdict, yet if a verdict may be concluded out of it to the point in issue, the Court shall work it into form and make it serve." In a general verdict on an indictment of several counts, or on several counts for the same cause of action, some of which are defective, the Court will presume that the verdict was based upon such counts as are good. Porter *vs.* Rummery, 10 Mass., 64 and note. Pettes *vs.* Bingham, 10 N. H. 514.

It is no presumption of fact to say, that the verdict rendered on this complaint meant something, that is, it meant either the first or second degree of the offence. No injustice was done, and no rule of law was violated by awarding, in this verdict, the penalty for the lowest degree.

Finally, was the jury that tried the case, legally impanneled?

In an indictment for murder, the panel of foreign jurors for the same term of Court, had been quashed, upon plea of

challenge to the array on the ground that the jury had not been drawn and summoned according to law.. When the Attorney General moved that a jury be impanneled to try the present case, the defendant's counsel objected, on the ground that no jury had been properly drawn and summoned, and therefore there could be no talesmen, and the Court had no power to summon a jury of talesmen, until a lawful panel was exhausted. The Court, however, decided, that as duly summoned jurors did not appear, the sheriff should summon from the by-standers or the Circuit at large, twelve good and sufficient men to act as jurors in this case, under Section 1199 of the Civil Code, which was done accordingly, to which ruling, as well as to the jury being sworn to try the case, against the objection of the defendant's attorneys, exception was duly taken.

It has been the practice here to regard the statute requiring that the names of thirty-six jurors be drawn by the clerk, at least twenty days before the term, as merely directory. In capital cases, the statute gives the prisoner's counsel the right to be informed of the names of the persons so drawn, who are to sit in his case. If any hardship resulted from delay in the drawing, it might be good cause for granting a continuance of such case until the following term.

Section 1199 of the Civil Code, reads: "Whenever a sufficient number of jurors, duly summoned, do not appear, or cannot be obtained to form a jury, the Court may order the Marshal or his deputy, to summon from among the by-standers or the circuit at large, so many persons, qualified to serve as jurors, as shall be sufficient." Section 1198, *Ib.,* provides that the clerk shall draw the jury "from the names of such persons as have been duly summoned to attend as jurors." It was argued that no trial could legally be held unless there had been a duly summoned jury, whose names had been first called, before the summoning of the talesmen.

In no respect is the law more nice, than in securing to all a legally constituted jury.    To prevent the danger of packing juries, it was provided that parties should have the benefit of a trial before "twelve good and lawful men," drawn by the clerk of the Circuit Court, from out of the thirty-six names previously drawn by the clerk of the Supreme Court.    It is true that no statute can ensure the attendance of the persons so drawn, and those who attend may prove to be disqualified, or in capital cases, may be retired by peremptory challenge of the defendant.    But the defendant was entitled to have the number of jurors required by law, *duly summoned*, before a *tales* could be granted.    The Constitution guarantees that the right of trial by jury "shall be held inviolable forever." It is incumbent upon the officers of the Government to see that a jury be duly summoned ; then, and not before, in case of the necessity arising, the by-standers may be summoned, in the manner provided in the statute.    It is immaterial whether, in this case, the defendant was prejudiced by the course adopted in regard to the jury ; we must consider whether, *in any case*, injury might not result, before we can overrule this exception.    We are of opinion that the jury was not legally formed.

This question was preliminary to those first considered, but all the defendant's exceptions have been passed upon, in order that they may not arise again.

Exception sustained, and new trial ordered.

R. H. Stanley and W. C. Jones, for defendant.

S. H. Phillips, Attorney General, for the Crown.

Honolulu, September 8th, 1869.