## PROVISIONAL GOVERNMENT OF THE HAWAIIAN ISLANDS *vs.* CHRISTIAN GERTZ.

### EXCEPTIONS.

HEARING, SEPTEMBER 22, 1893. DECISION, OCTOBER 20, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

It is not a ground for a new trial, that a jury was drawn, against the objection of the defendant, from the remainder of the regular panel after the names of twelve jurors who were sitting in another case had been withdrawn by order of the Court, no prejudice being shown to have resulted therefrom to the defendant.

Section 9, Chapter LVI, Laws of 1892, does not give the defendant the right to the closing argument when he presents no evidence.

Instructions need not be given in the form requested, if as given they correctly state the law and cover the ground.

The unexplained presence of opium in a case of goods imported by the defendant is evidence from which the jury may infer an intent on the part of the defendant to import the opium.

Making an entry of goods, and describing the goods in the entry as exempt from duty and as imported by the steamer "Australia" from San Francisco, is evidence from which the jury may infer that the steamer came from a foreign port.

### OPINION OF THE COURT, BY FREAR, J.

This case comes up on exceptions from the Circuit Court of the First Circuit, where at the last August Term the defendant, upon his appeal from the District Court of Honolulu, was found guilty of importing opium contrary to the provisions of Section 1, Act 12 of the Laws of the Provisional Government of the Hawaiian Islands.

The first exception was taken to the overruling of defendant's objection to the drawing of a jury from the remainder of the regular panel of thirty six jurors, after the names of

twelve jurors who were then sitting in another case had been withdrawn by order of the Court.

The excusing of jurors is a matter which, in the absence of statutory provisions to the contrary, lies in the discretion of the trial Judge, and such discretion will not be interfered with unless it has been abused or unless some prejudice has resulted therefrom to the complaining party. It is not an abuse of discretion to excuse twelve jurors for the reason that they are engaged in another case. If this could not be done, much delay and expense might needlessly be incurred, for no new case could be called while a jury was engaged in hearing another case or in deliberating upon a verdict after the case had been submitted to them, which might be many days; and in some instances it might also be unreasonable and against the interests of justice to require jurors to sit again immediately after finishing a long and wearisome case or after sitting in several cases successively. No prejudice has been shown in the present case to have resulted to the defendant by the withdrawal of the names of the twelve jurors. Indeed, in making up the jury in this case, notwithstanding a number of challenges, the remainder of the panel was not exhausted. No talesmen were required. Statutory provisions having been complied with, the question is, was there a fair and impartial jury. It is not even suggested that there was not such a jury in this case. The weight of authority is in harmony with the foregoing views, and some courts have gone further than we are required by the facts of this case to go.

In *State vs. Pitts*, 58 Mo., 556, it was held that when a portion of the regular panel were sitting in another case, it was competent to draw the jury from the remainder of the panel and, after exhausting that, to complete the jury from the bystanders. So in *Bradley vs. Bradley*, 45 Ind., 67. In *Alexander vs. Oshkosh*, 33 Wis., 277, it was held proper to excuse twelve jurors for the reason that they had just been discharged in another case. In *Emerick vs. Sloan*, 18 Ia., 139,

it was held proper to make up a jury of one of the regular panel and eleven talesmen, all the other jurors of the panel having been excused by the Court.    See also *Fuller vs. State*, 1 Blackf., 64, and *Rex vs. Macfarlane*, 7 Haw., 352.

The second exception was to the refusal of the Court to allow defendant's counsel to make the closing argument to the jury, the defendant having presented no evidence.    This is claimed as a right under that portion of Section 9, Chapter LVI., Laws of 1892, which reads as follows:    "If the defendant shall present any evidence, he, or his counsel, shall first, after the close of the evidence, address the jury upon the facts, after which the opposite side shall be entitled to the closing argument upon the facts."    It is contended that this statute by implication entitles the defendant to the closing argument if he presents no evidence.

By the express terms of Section 45, Chapter XL., Laws of 1876, (Comp. Laws, page 351), "after the accused or his counsel has summed up and closed his case, the prosecuting attorney shall have the right to sum up the entire evidence and close the debate."    Such also is the prevailing practice in the absence of statute.    "In all (criminal) cases, the right to open and close is with the prosecution, unless a different rule is declared by statute.    This is so, although the accused offers no evidence."    Thompson on Trials, Sec. 243.    This is only an application of the general rule that the right to close belongs to the party upon whom rests the burden of proof.    In view of the former express statute above quoted and the general rule of practice, an intention to change the order of argument should be clearly expressed in the later statute.    The statute in question provides what shall be the order of argument, "if the defendant shall present any evidence," but is utterly silent as to what shall be the order, if he shall present no evidence.    So far as the statute goes, it is not in conflict with the earlier statute. The Court cannot read into it words that are not there, and which, if inserted, would be inconsistent with, and therefore operate as a repeal of the earlier statute.    Repeals

by implication are not favored. Sutherland, Statutory Construction, Sections 138, 148, 152.

The exceptions to the refusal of the Court to give to the jury certain instructions requested by the defendant, and to the charge as given, and to the verdict as being contrary to the law and the evidence, will be considered together. The instructions refused, being the second, third, fourth and fifth requested, were as follows:

2. The fact (even if the jury believe it to be a fact), that opium was found in a case of goods belonging to, and consigned to defendant, will not of itself warrant conviction, but the jury must be also convinced from the evidence, beyond a reasonable doubt that such opium was placed there by the act, connivance, knowledge or. consent of the defendant. Unless such act, connivance, knowledge or consent of the defendant appears from the evidence beyond a reasonable doubt, the defendant should be acquitted.

3. The intent of the defendant is an essential feature in the proof of this charge. He cannot be convicted until the prosecution has adduced evidence to convince the jury not only that opium was imported, but also that its importation was accomplished in pursuance of the purpose and intent of defendant.

4. There is no evidence before the Court in this case tending to show an intent on the part of defendant to import the opium alleged to have been found in a case of goods belonging to him.

5. There is no evidence that the steamer "Australia," in which the opium in question is claimed to have been imported, arrived at Honolulu from any foreign port or country.

On the question of intent the Court charge the jury as follows: "As regards the question of intent, it is the law that in criminal matters there must be a criminal intent, and you must be convinced beyond a reasonable doubt that the defendant was knowingly and willfully a party to the introduction into this country from abroad of the opium herein charged to have been imported. * * * In regard

to intent—it is a question for you to find from the evidence and from the facts produced whether the defendant imported this opium. * * * If a man imports cases of goods and in those cases are contraband forbidden goods, prohibited goods, and it is unexplained, it is a question for the jury whether there was any intent on his part to import those goods." This instruction, (which embodies the first instruction requested by defendant), covers all that is contained in the third requested instruction. Instructions need not be given in the form requested, if as given they correctly state the law and cover the ground. *Rex vs. Ahop*, 7 Haw., 556 ; *Rex vs. Cornwell*, 3 Haw., 154.

The second requested instruction, so far as it relates to the question of intent or knowledge, is also covered by the instruction given by the Court, and in so far as it is not covered by the instruction given, it was properly refused. It would tend to lead the jury to think, erroneously, that the defendant must have known of, or consented to, the placing of the opium in the case, while it would be sufficient if he afterwards, but prior to its seizure, learned that it was there. It would also tend to give the jury an erroneous impression that the fact that opium was found in a case of goods belonging to, and consigned to defendant, would under no circumstances warrant conviction, and that the knowledge or consent of the defendant might not be inferred from the unexplained presence of the opium in one of his cases, but that it must be shown entirely by some other evidence, as by some positive words or acts proved to have been uttered or done by the defendant and directly showing knowledge or consent on his part.

The fourth requested instruction is open to the same objection. It contains an implication that the finding of the opium in the defendant's case is not evidence of an intent on his part to import the same, but that the intent must be shown entirely by other evidence, presumably direct evidence of what was in the brain of the defendant.

This brings us to the question whether, as respects the

question of intent, there was evidence to sustain the verdict. If there was evidence on this point, the Court was justified in refusing to instruct the jury that there was no evidence, as it was requested to do expressly in the fourth, and virtually in the second instruction. The jury found, or were fully warranted in finding, from the evidence, that certain cases of goods were imported by the defendant, that opium was found in one of those cases, and that the presence of the opium there was wholly unexplained. In view of these facts, it seems to us to have been properly left to the jury to say whether there was an intent on the part of the defendant to import the opium. The mere fact that opium was found in a case of goods belonging to and imported by the defendant is not conclusive evidence of guilty knowledge or intent, but it is *prima facie* evidence. It may be rebutted. The evidence introduced on behalf of the Government might of itself in some cases be such as to explain the presence of the opium without casting suspicion upon the defendant, or on the other hand it might in some cases be such as to throw very great suspicion upon him, making it almost absolutely necessary for him to offer evidence in rebuttal in order to clear himself. According to the circumstances, the defendant might in some cases not be required to make any attempt to rebut the evidence for the Government as to knowledge or intent, while in other cases, his failure to do so would be more or less strongly corroborative of the other evidence against him. Where, as in this instance, the opium is shown to have been in a case of goods imported by the defendant, and no explanation of this fact in any way appears, and it does not appear that it was not in the power of the defendant to procure evidence exculpating himself, or that any attempt was made to procure such evidence, it seems to us that the Court properly submitted the question to the jury to find whether, as an inference of fact, the opium was imported with the knowledge or consent of the defendant. See *Gordon vs. People*, 33 N. Y., 509, and *Schooner Mary and Cargo*, 1 Gall., 209. This, obviously, is not holding that an inference prejudicial to the

accused may be drawn from his neglect to offer himself as a witness, or that the presiding Judge may comment upon the strength or weakness of the evidence, but merely that he may charge the jury that there is evidence tending to establish a specific fact involved in the cause, leaving it to the jury to say whether the evidence is sufficient to establish that fact.

The fifth requested instruction was also properly refused. There was evidence that the steamer "Australia," in which the opium was alleged to have been imported, arrived at Honolulu from a foreign port. Witness Sanders testified that the steamer "Australia" arrived in Honolulu the 17th of last May. The defendant himself, in his inward entry, which was in evidence, signed and sworn to by himself, speaks of the goods in one of the cases of which the opium was found, as entitled to "exemption from duty, in accordance with the provisions of the Treaty of Reciprocity with the United States of America," and as "imported * * * in the steamer 'Australia' whereof Capt. Houdlette is master, from San Francisco." This is an admission that the steamer came from San Francisco, a foreign port. The very fact that an entry was made, and that exemption from duty was claimed was an admission that the goods were imported, for no entry is required, nor duty levied, for goods transported from one of these islands to another.

The exception to the allowance of an amendment to the verdict was abandoned at the argument.

The exceptions are overruled.

*Attorney-General W. O. Smith,* for the Government.

*C. W. Ashford,* for the defendant.