**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000472
30-JUN-2015
08:41 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

GOLD COAST NEIGHBORHOOD ASSOCIATION,
Plaintiff/Appellee/Cross-Appellant,
v.
STATE OF HAWAI'I,
Defendant/Appellant,
and
DOE GOVERNMENTAL ENTITIES 1-10,
DOE GOVERNMENTAL AGENCIES 1-10, Defendants
(CIVIL NO. 07-1-1122)

STATE OF HAWAI'I, by its ATTORNEY GENERAL,
Plaintiff/Appellant/Cross-Appellee,
v.
TROPIC SEAS, INC.; THE ASSOCIATION OF APARTMENT
OWNERS OF DIAMOND HEAD BEACH, INC.; DIAMOND HEAD APARTMENTS,
LTD.; CS APARTMENTS, LTD.; THE ASSOCIATION OF APARTMENT OWNERS OF
2987 KALAKAUA CONDOMINIUM; TAHITIENNE,
INCORPORATED; THE ASSOCIATION OF APARTMENT OWNERS OF 3003
KALAKAUA, INC.; and THE ASSOCIATION OF APARTMENT OWNERS
OF 3019 KALAKAUA, INC.,
Defendants/Appellees/Cross-Appellants,
and
OLIVIA CHEN LUM, Trustee of the Olivia Chen Lum
Revocable Living Trust; CLARENCE KWON HOU LUM, Trustee
of the Clarence Kwon Hou Lum Trust and Trustee under
the Will and Estate of Chow Sin Kum Lum; JEANNE S.J. CHAN
and HOWARD N.H. CHAN, Trustees of the Jeanne S.J. Chan
Trust; and THE DIAMOND HEAD AMBASSADOR HOTEL, LTD.,
Defendants/Appellees/Cross-Appellees,
and
JOHN DOES 1-20, DOE CORPORATIONS 1-20, DOE PARTNERSHIPS 1-20,
DOE ASSOCIATIONS 1-20, DOE GOVERNMENTAL AGENCIES 1-20,
AND DOE ENTITIES 1-20, Defendants
(CIVIL NO. 10-1-0888)

NO. CAAP-14-0000472

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

June 30, 2015

FOLEY, PRESIDING J., LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

This consolidated appeal arises from two cases that sought declaratory relief as to the ownership of a certain stretch of dilapidated seawalls at the Diamond Head end of Kalakaua Avenue in Waikiki on O'ahu. Defendant/Plaintiff/ Appellant/Cross-Appellee State of Hawai'i (**State**) appeals from the (1) Final Judgment filed February 3, 2014 and (2) "Findings of Fact, Conclusions of Law, and Order" (**FOFs/COLs/Order**) filed November 29, 2013 by the Circuit Court of the First Circuit[1] (**circuit court**) Plaintiff/Appellee/Cross-Appellant Gold Coast Neighborhood Association (**Gold Coast**) and Defendants/Appellees/ Cross-Appellants Tropic Seas, Inc. (**Tropic Seas**); The Association of Apartment Owners of Diamond Head Beach, Inc. (**AOAO of DH Beach**); Diamond Head Apartments, Ltd. (**DH Apartments**); CS Apartments, Ltd. (**CS Apartments**); The Association of Apartment Owners of 2987 Kalakaua Condominium (**AOAO of 2987**); Tahitienne, Incorporated (**Tahitienne**); The Association of Apartment Owners of 3003 Kalakaua, Inc. (**AOAO of 3003**); and The Association of Apartment Owners of 3019 Kalakaua, Inc. (**AOAO of 3019**) (collectively, the **Kalakaua Group**) cross-appeal from the circuit court's "Order Denying Plaintiff Gold Coast Neighborhood Association Etal's Motion for Attorneys' Fees and Costs Filed February 18, 2014" filed May 13, 2014 (**Order Denying Fees and Costs**).

On appeal, the State contends the circuit court lacked jurisdiction and erred on the merits, and the Kalakaua Group contends the circuit court erred by not awarding it attorneys'

_____

[1] The Honorable Virginia L. Crandall presided.

2

fees and costs.

## I. BACKGROUND

Gold Coast filed a complaint, first amended complaint, and second amended complaint against the State on June 22, 2007, August 19, 2008, and September 13, 2010, respectively (Civil No. 07-1-1122).[2]  Gold Coast alleged that it "is a non-profit organization . . . comprised of individuals who own real property along Kālakaua Avenue on the Waikiki coastline . . . ."  Gold Coast alleged that it was in a dispute with the State over "whether the State has the duty to maintain in good and safe condition a long stretch of seawall on the Waikiki coastline along Kalakaua Avenue . . . (the 'Gold Coast')[.]"  Gold Coast also alleged that

(1) "the Seawall was built by unknown private parties at least 80 years prior to the date of this filing";

(2) "the public has used the Seawall as a thoroughfare along the coastline for most, if not all, of its existence";

(3) Gold Coast nor "its predecessors . . . prevented or discouraged members of the public from accessing the Seawall";

(4) "[t]he Seawall is in an unsafe condition and poses an imminent danger to members of the public who use the Seawall as a thoroughfare"; and

(5) in 1992, the State issued a notice declaring that it "has a right-of-way" over the Seawall "and is responsible to keep [it] in good and safe condition."

Gold Coast further alleged that the State "repaired and rehabilitated the Seawall in 1992"; "appropriated funds for improvements to the Seawall in years since the 1992 rehabilitation, but did not release these funds for actual use"; and despite Gold Coast's "repeated demands[,] . . . has consistently informed [Gold Coast] that the State does not have a

---

[2]     Gold Coast's original complaint addressed twenty-one parcels of real property along the Gold Coast.  The first amended complaint dropped ten of the twenty-one properties named in the original complaint and added one property.  The second amended complaint removed one of the properties (i.e., the parcel owned by Oceanside Manor Association) and therefore there are eleven properties, which are not all contiguous, that are subject to this suit.

duty to maintain the Seawall in a safe condition." Gold Coast claimed the "State is responsible to maintain and keep the Seawall in a good and safe condition and further, as the Seawall is a public highway, the State has a duty to maintain the Seawall in a condition safe for travel." Gold Coast sought a declaration "that the State is required to maintain the Seawall and keep it in good and safe condition" and an award of attorneys' fees and costs.

The State filed answers to Gold Coast's complaints on July 12, 2007, September 24, 2008, and September 20, 2010. The State contended that

(1) Gold Coast failed to state a claim upon which relief can be granted;

(2) Gold Coast's claims were barred by the State's sovereign immunity, the statute of limitations, the political question doctrine, the provisions of Hawaii Revised Statutes (**HRS**) chapters 501 and 520, waiver, estoppel, and laches;

(3) Gold Coast does "not own the [(**Seawall**[3])] or any interest in it"; the State "does not have a duty to repair and maintain the [Seawall]" and "will not repair or maintain the [Seawall]";

(4) the circuit court lacked subject matter jurisdiction;

(5) the alleged controversy was not ripe; and

(6) Gold Coast lacked standing.

On April 26, 2010, the State filed a complaint (Civil No. 10-1-0888) for declaratory relief against Tropic Seas; AOAO of DH Beach; DH Apartments; CS Apartments; AOAO of 2987; Tahitienne; AOAO of 3003; AOAO of 3019; Defendants/Appellees/ Cross-Appellees Olivia Chen Lum, trustee of the Olivia Chen Lum Revocable Living Trust (**Olivia Lum**); Clarence Kwon Hou Lum, trustee of the Clarence Kwon Hou Lum Trust and trustee under the Will and Estate of Chow Sin Kum Lum (**Clarence Lum**); Jeanne S.J. Chan and Howard N.H. Chan, trustees of the Jeanne S.J. Chan Trust

---

[3]    To achieve consistency throughout the remainder of this opinion, this court refers to the "Seawall" rather than "seawall" or "seawalls." At times, however, we quote the parties' references to the "seawall" or "seawalls."

(the "**Chans**"); Diamond Head Ambassador Hotel, Ltd. (**DH Ambassador Hotel**); and Oceanside Manor Association (**Oceanside Manor**). The State alleged, inter alia, that each parcel of real property listed in the complaint "is located on or adjacent to the ocean shore and makai[4] of Kalakaua Avenue . . . [and] has a seawall at its makai boundary"; "Defendants own, control, or manage the subject real properties, including the property on which the [Seawall is] located"; "[n]one of the [Seawall was] built by the Kingdom, Territory, or [State]"; and "an actual controversy that may be resolved by a declaratory judgment" exists between the State and the "defendants as to the ownership of the seawalls and the real property under the [Seawall] and as to whether or not the State has an easement on or over the [Seawall]" because a lawsuit brought by Gold Coast against the State "is pending." The State sought "a declaration that it does not own the seawalls or the real property under the seawalls and . . . does not have an easement by prescription or implication over the [Seawall]" and costs.

Answers to the State's complaint were filed by (1) Olivia Lum, Clarence Lum, and the Chans (collectively **Individual Defendants**); (2) AOAO of 3003; (3) Tropic Seas, AOAO DH Beach, DH Apartments, CS Apartments, AOAO of 2987, Tahitienne, and AOAO of 3019 (collectively **AOAO Defendants**); (4) Oceanside Manor; and (5) DH Ambassador Hotel. The Individual Defendants, AOAO of 3003, and the AOAO Defendants alleged in their answers to the complaints that the public consistently used "the [Seawall] as a public thoroughfare for at least 50 to 100 years"; the State's "claims are barred by its consent or voluntary participation"; and the State accepted "responsibility over the [Seawall] over the past several decades." The Individual Defendants and the AOAO Defendants alleged that the State's lawsuit was barred because the State's claims could have been brought as compulsory counterclaims pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 13(a). DH Ambassador Hotel alleged that the "seawall along Makai boundary of [its] property was rebuild [sic] and/or

_____

[4] "Makai" means seaward in Hawaiian. Pukui, M.K. & Elbert, S.H., Hawaiian Dictionary: Hawaiian-English, English-Hawaiian at 520 (1986).

reconstructed after 1991 by the [State]" and the State "knowingly and voluntarily assumed the dominion and control over portions of the [Seawall] adjoining [DH Ambassador Hotel's] property."

On June 15, 2010, the State filed a motion to consolidate its case (Civil No. 10-1-0888) with the case brought by Gold Coast against the State (Civil No. 07-1-1122), and the circuit court granted the motion on August 10, 2010.

On March 18, 2011, the circuit court filed the "First Stipulation of Facts" (**SOF**). The SOF refers to the "Seawall" without prejudice because "[t]he parties disagree as to whether it is more appropriate to refer to them as one seawall or multiple seawalls." The SOF includes but is not limited to the following stipulations:

- AOAO Defendants, DH Ambassador Hotel, and AOAO of 3003 are members of Gold Coast.

- The Seawall is "on, at, or near the seaward boundary of" eleven parcels of real property.

- Tropic Seas, AOAO of DH Beach Hotel, DH Apartments, CS Apartments, AOAO of 2987, Tahitienne, AOAO of 3003, and AOAO of 3019 each own one of the eleven parcels of property, and DH Ambassador Hotel owns three of the eleven parcels.

- "Sometime around 1982," the Land Division of the State's Department of Land and Natural Resources (**DLNR**) "repaired and rehabilitated broken sections of the Seawall" that included the portion of the Seawall on the makai boundaries of DH Apartments, CS Apartments, and AOAO of 2987.

- In June 1982, DLNR completed "emergency repair work . . . to shore approximately 40 feet of the Seawall along the boundary of [DH Apartments]."

- "Sometime after May 1984, the State did additional work on one or more portions of the Seawalls[,]" referring to that work as the "Waikiki Seawall, Walkway Rehabilitation, Phase III," and describing its work completed as repairs to "walkway on top of existing wall."

- The "Waikiki Seawall, Walkway Rehabilitation, Phase III" affected the portions of the Seawall on the makai boundaries of eight of the eleven parcels at issue, not including the portion on the boundary of Tropic Seas (TMK 3-1-032-030) or the portions on the boundaries of two of DH Ambassador Hotel's three parcels (TMK 3-1-032-029 and TMK 3-1-032-28).

- In September 1993 and pursuant to a Special Management

Area Use Permit and Shoreline Setback Variance granted by the City and County of Honolulu, DLNR "built or rebuilt essentially the entire" portion of the Seawall on the makai boundary of the DH Ambassador Hotel (TMK Nos. 3-1-032:026, 027, 028) in response to damage caused by Hurricane Iniki.

- In September 1993, the makai boundary of the DH Ambassador Hotel (TMK Nos. 3-1-032:026, 027, 028) was essentially the same as the shoreline, and "[t]herefore to the extent the State built the wall makai of the then shoreline the wall is on State property."

- On or about March 15, 2002, the State, via a letter from DLNR, informed a "concerned resident" "that no permits were ever obtained to attach a sea ladder to the sea wall adjacent to the [DH] Ambassador Hotel."

- On July 25, 2003, the State granted Gold Coast a "Non-Exclusive Easement for a term of 55 years for the right, privilege, and authority to construct, use, maintain and repair a ladder 'in, over, under, and across" a portion of the Seawall on the makai boundary of one of DH Ambassador Hotel's parcels (TMK 3-1-032:027).

- Gold Coast paid the State $2,406 for the Non-Exclusive Easement and procured commercial general liability insurance in accordance with the terms of the Non-Exclusive Easement.

- "The State reserved the right to withdraw the Non-Exclusive Easement for public use or purposes, at any time during the term of the easement upon the giving of reasonable notice to [Gold Coast]."

- On August 12, 2003, Gold Coast installed a sea ladder onto the TMK 3-1-032:027 portion of the Seawall (i.e., a ladder that is bolted to the Seawall and descends into the ocean).

- The portion of the Seawall on the makai boundary of AOAO of 3019's parcel (TMK 3-1-033:009) was apparently worked on in 2006 but the parties do not know who did the work.

- In 2006, "the State appropriated $2 million for plans, design and construction for the resurfacing of the seawall and installation of railings along Waikiki's Gold Coast."

- "Since at least 1960[,]" the State has held an express "easement of right of way for pedestrians only over, across and along the seawall along the highwater mark at seashore" with regard to the portion of the Seawall on the makai boundary of AOAO of 3019's parcel.

On March 22, 2011, the circuit court held a bench trial at which June Anderson (**Anderson**), Robert Gentry (**Gentry**), and

Guy Bishaw (**Bishaw**) testified for the Kalakaua Group.[5]  On March 31, 2011, the circuit court conducted a site visit.

On November 29, 2013, the circuit court entered its FOFs/COLs/Order.  The "Findings of Fact" (**FOFs**) section of the circuit court's FOFs/COLs/Order included the facts that were stipulated to by the parties in the SOF and the following pertinent FOFs:

- No part of the Seawall existed in 1872; the portion of the Seawall that is on the makai boundaries of four of the eleven parcels existed in 1904; the portion of the Seawall that is on the makai boundaries of five other of the eleven parcels existed in 1912; and the portion of the Seawall that is on the makai boundaries of the two remaining parcels was constructed sometime between 1921 and 1930.

- The Seawall was built "for the primary purpose of protecting private property from erosion."

- At high tide, the Seawall exists in contact with the ocean along its entire length.

- The State has never repaired the portion of the Seawall on the makai boundary of the Tropic Seas parcel, and while some of this portion of the Seawall is makai of the shoreline as defined by HRS § 205A-1 (2001 Repl.)[6] and therefore on State land, "nearly" the entire Tropic Seas' portion of the Seawall is on registered land.

- The portion of the Seawall on the makai boundary of the DH Beach Hotel parcel lies on both State land and registered land.

- The portion of the Seawall on the makai boundary of the DH Ambassador Hotel parcel was repaired by the State in 1984, and rebuilt in 1993 after Hurricane Iniki on State land makai of the then shoreline, and lies in part on State land.

- The portion of the Seawall on the makai boundary of the

---

[5]     Russell Tsuji, the State Land Division Administrator, testified for the State.

[6]     HRS § 205A-1 provides:

**§205A-1 Definitions.**

.   .   .   .

"Shoreline" means the upper reaches of the wash of the waves, other than storm and seismic waves, at high tide during the season of the year in which the highest wash of the waves occurs, usually evidenced by the edge of vegetation growth, or the upper limit of debris left by the wash of the waves.

DH Apartments parcel was repaired by the State in 1982 and again sometime after May 1984, and lies in part on State land.

- The portions of the Seawall on the makai boundaries of the CS Apartments, AOAO of 2897, Tahitienne, and AOAO of 3003 parcels were repaired by the State sometime after May 1984, and lie in part on State land.

- The portion of the Seawall on the makai boundary of the AOAO of 3019 parcel was repaired by the State sometime after May 1984, lies on both State land and registered land, and is the only parcel of the eleven subject to this suit that has "a record easement in favor of the general public."

- The only public beach access route (i.e., public path connecting Kalakaua Avenue to the ocean) along the Gold Coast crosses a parcel that was included in the original complaint but was removed by the first amended complaint (TMK No. 3-1-033:006).

- A person can access the Seawall (1) by using the public beach access route, (2) from the beach in front of two parcels at the Diamond Head end of the Gold Coast, (3) from the beach in front of two parcels at the Waikiki end of the Gold Coast, (4) from the ocean where the Seawall is low enough for the person to climb up onto the Seawall from the ocean, (5) by using the metal steps on the Seawall in front of the DH Ambassador Hotel, and (5) from any of the parcels bordering the Seawall.

- In 1975, the Deputy Attorney General for the State, Wallace W. Weatherwax (**DAG Weatherwax**), communicated by memorandum to the Harbors Division of the State's Department of Transportation (**DOT**) that he opined that the State had "the responsibility to maintain the public right of way over the seawall [located at TMK 3-1-33-2, 53] and that DLNR is the agency responsible to maintain the Seawall." DAG Weatherwax referenced "a Quitclaim Deed dated December 9, 1930 which reserved a pedestrian public right of way over, along and across the Seawall." DAG Weatherwax noted that neither DLNR nor DOT had "any records of maintenance or repair of the Seawall."

- "By letter dated March 15, 2007, the State informed [Gold Coast], through counsel, that the State disputed that it had an easement over the Seawall and disputed that the State had a duty to maintain the Seawall."

- "In 1982, in the Environmental Assessment for the repair of the portion of the Seawall near the [DH Apartments,]" DLNR stated that the "top of the seawall serves as a public walkway for residents and beachgoers"; "[r]esidents, surfers, beachgoers and fishermen use the top of the seawall to traverse between the Diamond Head end of Waikiki Beach and Sans

Souci Beach."

- The "Contract Specifications and Plans" for Phase III of the Waikiki Seawall Walkway Rehabilitation "project dated May 1984 state: 'The State has a right-of-way over the seawall and had obtained a right-of-entry onto [a list of properties including but not limited to the DH Ambassador, DH Apartments, and AOAO of 3019] for the rehabilitation of the seawall walkway."

- In 1992, "DLNR released a 'Notice of Determination (Negative Declaration) for the Waikiki Seawall Walkway Rehabilitation, Phase V,' which stated" that the seawalls and walkways are used by the public and generally located inside the affected properties; the State "has a right-of-way over all the seawalls and walkways and is responsible to keep them in good and safe condition"; and the State was "obtaining right-of-entry onto the properties and to construct in the lots." [sic]

- Gold Coast "is a non-profit corporation comprised of residents and owners of real property bordering the Diamond Head Seawall." Gold Coast membership "is open to all those who live in the area along the Diamond Head Seawall and, at this time, no dues are paid." Gold Coast "assumes that owners of property bordering the Diamond Head Seawall do not have the right to block the public from using the Seawall."

- The owners and residents of the properties bordering the Seawall "have access to the Seawall via gates and . . . use the Seawall for access to the shoreline and ocean."

- Anderson, a member of Gold Coast, has lived at the DH Apartments for over thirty-seven years, used the Seawall as a pathway for over fifty-five years, and "[t]hroughout this entire period . . . observed the public using the Seawall as a walkway and thoroughfare, as well as for access to the ocean for fishing, surfing, and swimming."

- Anderson is unaware "of any of the private property owners along the Gold Coast exercising any control over the Seawall or blocking any member of the public from use of the Seawall."

- Gentry, the President of Gold Coast, has resided on Kalakaua Avenue on the Gold Coast since 1982. "From that time forward, [Gentry] has observed members of the public use the [Seawall] as a walkway and for recreational purposes on a continuous basis." Gentry is unaware of any owner of property along the Seawall ever blocking the public from using the Seawall. To the best of Gentry's knowledge, owners along the Seawall have acquiesced to the public's use of the "Seawall as a walkway and for access to ocean activities."

- Bishaw was raised in and is a resident of Waikiki "and has used the Seawall to access offshore surfing spots" for approximately forty years. Bishaw has used the Seawall to access the surfing spots with his friends and family "and has seen other members of the public do the same."

- "The public has used the Seawall for both shoreline and ocean access for decades and has done so without any apparent interference from any private landowners along the Gold Coast."

- The circuit court and counsel for the parties conducted a site visit on March 31, 2011. "The site visit included a walk both along the length of the Gold Coast along Kalakaua Avenue and along the length of the shoreline, including the Seawall[.]"

- "No signs or other indicia of ownership were observed along the Seawall which might have indicated any blocking of use of the Seawall by any private party."

- During the site visit, the Seawall was "uneven and crumbling in parts" and "the court noted numerous pipes protruding from the Seawall."

The circuit court made the following pertinent conclusions of law:

- Gold Coast "presented clear and convincing evidence to prove that the State has a prescriptive easement over the Seawall for pedestrian travel as of 1969."

- Under the doctrine of implied dedication, "the long-continued public use of the Seawall as a walkway . . . clearly raises a rebuttable presumption that the landowners . . . intended to dedicate the Seawall as a public walkway. The landowners do not dispute that presumption and no evidence has been presented to rebut that presumption."

- "[T]here is more than enough time to satisfy the requirement that the period [of public use] be 'much more' than the prescriptive period where public use is the 'only' evidence of acceptance of dedication."

- "[T]he more than fifty years of continuous public use is not the only evidence of acceptance of dedication. . . . [T]here is evidence of implied acceptance by the State based on its assertion of dominion and control over the Seawall through the State's statements that the Seawall is a public right of way and the State's actions in repairing and rehabilitating the Seawall."

- "[A]n easement over the Seawall is critical to public access to the shoreline along the Gold Coast. . . . [T]he balancing of the public polic[ies] . . . weighs in favor of the implied dedication of an easement over the Seawall for pedestrian use."

- "[T]o prevail on its claim that the Seawall . . . is a public thoroughfare that has been surrendered to the State [under HRS § 264-1(c) (2007 Repl.)]," Gold Coast must prove: "1) the Seawall is a thoroughfare that was opened, laid out, or built by private parties, and 2) that the owners have not exercised an act of ownership over the Seawall for five years or more."

- Gold Coast "proved that the Seawall is a thoroughfare that was opened, laid out, or built by private parties."

- "[T]he evidence establishes that the owners have not exercised an act of ownership over the Seawall for five years or more."

- Gold Coast proved that the Seawall, except for the portions "that are on privately owned land registered in the Land Court" (i.e., TMK No. 3-1-032:029 (DH Beach Hotel) and TMK No. 3-1-032:030 (Tropic Seas)) "was surrendered to the State in accordance with HRS § 264-1(c)."

- The State "has the right and duty to maintain" the portion of the Seawall on the makai boundary of TMK No. 3-1-32:009 because "the State holds an express easement over that portion of the Seawall."

- The State owns and is responsible for the portion of the Seawall on the makai boundary of the DH Ambassador Hotel because it substantially rebuilt that portion of the Seawall.

- "[T]he State owns the Seawall and the real property under the seawall by surrender and/or has an easement over and across the Seawall by implied dedication. . . ."

On February 3, 2014, the circuit court entered the Final Judgment in favor of Gold Coast and against the State with respect to Civil No. 07-1-1122, and in favor of the Kalakaua Group, the DH Ambassador Hotel, and the Individual Defendants and against the State with respect to Civil No. 10-1-0888. The Final Judgment[7] ordered:

> 1. The [State] owns the relevant seawall or seawalls in this matter on, at, or near the seaward boundary of [the eleven parcels at issue] (referred to hereinafter as the "Seawall") and the real property under the Seawall by surrender except as to the portions of the Seawall [on the makai boundaries of DH Beach Hotel and Tropic Seas because they] are on privately owned land registered in the Land Court. The State also hold [sic] an easement by implied dedication over all the entire Seawall including those

---

[7] On February 25, 2014, the State filed its notice of appeal from the circuit court's FOFs/COLs/Order and Final Judgment.

12

portions of the Seawall [on the makai boundaries of DH Beach Hotel and Tropic Seas because they] are on privately owned land registered in the Land Court.

2. The State's claim for declaratory judgment . . . is denied and that case is hereby dismissed in its entirety with prejudice.

This Judgment resolves all claims asserted between the parties[.] . . . Each party shall bear its/his/her own attorneys' fees and costs.

On February 18, 2014, the Kalakaua Group filed a motion for attorneys' fees and costs seeking an award of $376,539.25. The Kalakaua Group argued that Gold Coast was "entitled to an award of $362,831.79 in reasonable attorneys' fees (and taxes) pursuant to the private attorney general doctrine." The Kalakaua Group argued that the first prong of the private attorney general doctrine's three-pronged test was satisfied because the circuit court's decision in Gold Coast's favor vindicated the following public policies: "(1) preserving this particular Seawall for all residents and visitors to Waikiki; (2) holding the State to its duty to preserve and maintain public highways in a safe condition; and (3) reaffirming the public's right to access the beach." The Kalakaua Group argued that the second prong of the private attorney general doctrine test was satisfied because "it was necessary for Gold Coast to file suit and [Gold Coast] was solely burdened with this private enforcement of public rights." The Kalakaua Group explained that

it was necessary for Gold Coast to bring the lawsuit to enforce the duties that the State owed to the public when from 1975-2006, the State acknowledged a public right-of-way over the Seawall, repaired the Seawall to keep it available to the public to use as a walkway, and proposed repairs that were consistent with the acceptance of the Seawall as a public walkway. Also, the State refused to recognize its obligation to maintain and repair the Seawall, and, significantly, filed its own lawsuit against the various landowners adjacent to the Seawall seeking a declaration that the Seawall was not a public highway. Furthermore, Gold Coast was "solely responsible" for challenging the State's erroneous conclusion that it no longer had an obligation to maintain and repair the Seawall to ensure public access to the beach and for clarifying the State's responsibilities under the law.

The Kalakaua Group argued that the third prong of the private attorney general doctrine test was satisfied because "the public at large benefits from the decision[.]" The Kalakaua Group explained that the decision "ensures that the State will

continue to repair and maintain the Seawall for the enjoyment of residents and visitors" and "prevents the State from reneging on future obligation to maintain public highways in a safe condition for the public and reaffirms the longstanding public policy in favor of access to Hawaii's [Hawai'i's] beaches." The Kalakaua Group argued that "[a]ny defense of sovereign immunity is 'unavailing and inapposite' insomuch as the State initiated its own litigation in this case[,]" and that the circuit court has the inherent power to award reasonable attorneys' fees when justice so requires.

The Kalakaua Group argued that Gold Coast was entitled to costs in the amount of $13,707.46 under HRS § 607-24 (1993) because Gold Coast prevailed and had received a final judgment against the State.

On February 28, 2014, the State filed its Memorandum in Opposition to the Kalakaua Group's motion for attorneys' fees and costs. The State argued that the Kalakaua Group's motion for attorneys' fees and costs was barred as untimely filed under HRCP Rule 59(e) because it sought to alter or amend the Final Judgment that ruled "[e]ach party will bear its own fees and costs associated with this legal action." The State also argued that the Kalakaua Group's motion should be denied because (1) the State did not waive its sovereign immunity with regard to the claim for declaratory relief brought against the State by Gold Coast and (2) the private attorney general doctrine applies to plaintiffs, not defendants.

The State also argued that the Kalakaua Group's motion is without merit because the circuit court's ruling in no way vindicates public policy or benefits anyone other than the private property owners. The State explains that it "always had a general duty to maintain all of its property" and argues that "the lawsuit changes nothing" because whether the State appropriates and spends the money to repair the walls is a political question. The State contends "there is no evidence as to the number of persons in the general public (as opposed to owners in adjacent buildings) who use the walls. The court's findings do not state a number."

14

The State argued that even if Gold Coast is entitled to attorneys' fees, the amount it is awarded must be substantially reduced because (1) the circuit court's ruling did not provide the relief requested, and (2) the hours claimed "are unsupported, excessive, and unwarranted." The State further argues that Gold Coast is not entitled to costs because it failed to obtain meaningful relief and provided the circuit court with "absolutely no detail as [to] any of [its] charges."

On March 5, 2014, the Kalakaua Group filed their Reply Memorandum in Support of its motion for attorneys' fees and costs. The Kalakaua Group argued its motion for attorneys' fees and costs was timely filed in accordance with HRCP Rule 54(d)(2). The Kalakaua Group argued that the type of relief sought "is irrelevant because sovereign immunity is not implicated" when the State initiates its own litigation. The Kalakaua Group also argued that Gold Coast obtained meaningful relief because it received a declaration that the public has used the Seawall for decades and that the State owns the Seawall, and therefore received relief that implies the State has a duty to maintain and repair the Seawall for the benefit of the public. The Kalakaua Group further argued that the amount for attorneys' fees it requested was reasonable and that it "provided a comprehensive billing of all of the fees incurred." The Kalakaua Group argued that it was entitled to costs because it was "indeed the prevailing party."

On May 13, 2014, the circuit court filed its order denying the Kalakaua Group's motion for attorneys' fees and costs based on its conclusion that the "State has not waived its sovereign immunity." On June 6, 2014, the Kalakaua Group filed its notice of appeal from the circuit court's Order Denying Fees and Costs.

## II. STANDARDS OF REVIEW

### A. Jurisdiction

"The existence of jurisdiction is a question of law that [the appellate court reviews] de novo under the right/wrong standard." Captain Andy's Sailing, Inc., v. Dep't of Land and Natural Res., State of Hawai'i, 113 Hawai'i 184, 192, 150 P.3d

15

833, 841 (2006) (citation, internal quotation marks, and brackets omitted).

## B.    Conclusions of Law

"An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test.  A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned."  Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994) (citations and internal quotation marks omitted).

## C.    Statutory Interpretation

> The interpretation of a statute is a question of law reviewable de novo.
>
> Furthermore, our statutory construction is guided by established rules:
>
> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  HRS § 1-15(1) (1993).  Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.
>
> The [appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.  HRS § 1-15(2).  Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called upon in aid to explain what is doubtful in another.  HRS § 1-16 (1993).
>
> State v. Koch, 107 Hawaiʻi 215, 220, 112 P.3d 69, 74 (2005). . . . Absent an absurd or unjust result, the [appellate] court is bound to give effect to the plain meaning of unambiguous statutory language; we may only resort to the use of legislative history when interpreting an ambiguous statute.

Silva v. City & Cnty. of Honolulu, 115 Hawaiʻi 1, 6-7, 165 P.3d

16

247, 252-53 (2007) (citations, internal quotation marks, elipses, and brackets omitted) (format altered).

## D. Attorneys' Fees and Costs

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., State of Hawai'i, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (internal quotation marks and brackets omitted) (quoting Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008)).

## III. DISCUSSION

## A. The State's contentions on appeal

(1) The State contends the circuit court did not have jurisdiction over the instant case because there was no "actual controversy" as implicitly required for a declaratory judgment under HRS § 632-1 (1993). The State contends there was no actual controversy because the prospect of future litigation over the condition of the Seawall is purely speculative, and the Kalakaua Group's request for declaratory relief was essentially a request for an advisory opinion to the legislature on whether or not the State should appropriate funds to repair the Seawall. The State argues that HRS § 632-1 does not give the Kalakaua Group "the right to an advisory opinion regarding some hypothetical future personal injury."

(2) The State contends the circuit court did not have jurisdiction over the instant case because the only order issued by the circuit court addressed ownership of the Seawall and therefore the case brought by Gold Coast was "a quiet title action" governed by chapter 669 of the HRS. The State contends that Gold Coast may not bring a quiet title action because under HRS § 669-1(a) (1993), plaintiffs without an interest in the subject property may not seek to quiet title in the name of third parties; "the State has sovereign immunity as to a quiet title claim by a stranger to the property"; and HRCP Rule 19(a) requires "the ACTUAL OWNERS OF PROPERTY" to be named as parties.

(3) The State contends the circuit court did not have jurisdiction over the instant case because Gold Coast lacked standing. The State contends Gold Coast lacked standing because,

17

inter alia, the individual members of Gold Coast would have to participate in the litigation because they are necessary parties under HRCP Rule 19(a); the individual members do not have standing to sue in their own right because they did not suffer an actual or threatened injury as a result of the State's conduct; and even if the members of Gold Coast were injured, a favorable decision from the circuit court provides no relief because the courts cannot direct the State to appropriate and expend funds.

(4) For the first time on appeal, the State contends the circuit court erred on the merits when it concluded that the State acquired ownership of the Seawall by either implied dedication or surrender under HRS § 264-1(c) because private parties cannot transfer property to the State without its knowledge or consent under HRS § 171-30(a)(1) (2011 Repl.) and HRS § 26-7 (2009 Repl.).[8]

(5) The State contends the circuit court erred on the merits when it concluded that the State owns the portions of the Seawall that are not registered in land court and the land under those portions by surrender because the Seawall is not a "trail" or a "public highway" under HRS § 264-1(c).

(6) The State contends the circuit court erred on the merits when it concluded the State acquired an easement over and across the Seawall by implied dedication because Gold Coast failed to establish that the public's use of the Seawall was not permissive, there is no evidence that the owners of the Seawall intended to dedicate it to public use, and Gold Coast did not meet its "burden to show clear and convincing evidence of public use on a 'regular and continuous basis' long before 1959."

The Kalakaua Group contends the circuit court did not err because the circuit court did not convert Gold Coast's case

---

[8]     On May 7, 2015 and in support of its argument that private parties cannot transfer property to the State without the State's knowledge or consent, the State filed a letter with the appellate clerk that brings to this court's attention HRS § 107-10 (2012 Repl.). The State's letter fails to comply with Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(j) because HRS § 107-10 was published before the State's opening brief was filed on July 9, 2014. See HRAP Rule 28(j) ("Parties may, by letter to the appellate clerk, bring to the appellate court's attention pertinent and significant authorities published after a party's brief has been filed, but before a decision." (Emphasis added.)).

from one for a declaratory judgment to one for quiet title, had jurisdiction over Gold Coast's action, and correctly concluded that the State acquired the Seawall by surrender under HRS § 264-1(c) and implied dedication.

DH Ambassador Hotel contends all of the State's arguments are inapplicable to the portion of the Seawall on the makai boundaries of the DH Ambassador Hotel parcels because the parties' SOFs and the circuit court's unchallenged FOFs establish that the State constructed this portion of the Seawall in 1993 and "virtually all of the Seawall fronting [the DH Ambassador Hotel's parcels] is located on State property" and therefore the State owns and is responsible for that portion of the Seawall.

The State replies to Kalakaua Group's arguments by reiterating the arguments that it made in its opening brief and by arguing that the circuit court's COL #17, which states stating "There is no evidence that the public sought or received permission to use the Seawall as a walkway, or that the owners asserted that the public use of the Seawall was only by permission of the owners[,]" means that Gold Coast failed to meet its burden to establish that the public use of the Seawall "was hostile or adverse to ownership of the [Seawall.]"

The State replies to DH Ambassador Hotel's arguments by noting it agrees with DH Ambassador Hotel's conclusion that "most" of the portion of the Seawall on the makai boundaries of the DH Ambassador Hotel's properties was built on State land, but argues that "all of the arguments made in the State's opening brief apply fully to that small portion of the land owned by [DH Ambassador Hotel]." The State argues that DH Ambassador Hotel's encroachment onto State land "does not transfer [DH Ambassador Hotel's] property to the State" and that the circuit court "erred by ruling that the State now owns [the DH Ambassador Hotel] land underlying the seawall."

**B.    The State's jurisdictional arguments are without merit.**

The State contends the circuit court did not have jurisdiction over the instant case because:  (1) there was no "actual controversy" as implicitly required for a declaratory judgment under HRS § 632-1; (2) Gold Coast's action was in effect

one for quiet title and plaintiffs may not bring quiet title actions in the name of third parties; and (3) Gold Coast lacked standing.

HRS § 632-1 provides, in relevant part:

§632-1 Jurisdiction; controversies subject to.

. . . .

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation . . . and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed[.]

The circuit court had jurisdiction under HRS § 632-1 because antagonistic claims were present between the parties as indicated by Gold Coast's and the State's filing of reciprocal suits for declaratory relief.

Gold Coast's complaint cannot be treated as an action for quiet title against the State under HRS § 669-1(a) because the State did not claim an interest in the Seawall.[9] The circuit court's rulings as to the ownership of the Seawall did not transform the action into one for quiet title because actions for quiet title settle disputes between plaintiffs and defendants who both claim title to the real property at issue, not between plaintiffs and defendants who both seek a declaratory judgment relieving them from any future liability stemming from apparent ownership. See Maui Land & Pineapple Co. v. Infiesto, 76 Hawai'i 402, 408, 879 P.2d 507, 513 (1994) ("While it is not necessary for the plaintiff to have perfect title to establish a prima facie case [for quiet title], he must at least prove that he has a substantial interest in the property and that his title is superior to that of the defendants.").

C.   **The State has a duty to maintain the Seawall as a public walkway because it acquired an easement by implied dedication for that purpose.**

---

[9]   A party may file an action for quiet title pursuant to HRS § 669-1(a), which provides that an "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In its FOFs/COLs/Order, the circuit court concluded the State "has an easement over and across the Seawall by implied dedication." The circuit court also concluded that "the State has a prescriptive easement over the Seawall for pedestrian travel as of 1969." In its Final Judgment, the circuit court ordered that the State holds "an easement by implied dedication over all the entire Seawall including those portions of the Seawall . . . [that] are on privately owned land registered in the Land Court." While the doctrines of easements by prescription and easements by implied dedication have similarities, they are not one in the same and thus must be examined separately.

A prescriptive easement is acquired "by use and occupation for the period prescribed by law [for adverse possession]. . . . [T]he use and occupation of the easement must be long, continued, uninterrupted and peaceable." Lalakea v. Hawaiian Irrigation Co., 36 Haw. 692, 706-07 (Haw. Terr. 1944); see also The Nature Conservancy v. Nakila, 4 Haw. App. 584, 598, 671 P.2d 1025, 1035 (1983) (holding that the party claiming the prescriptive easement has the burden of proving "the same elements necessary to prove acquisition of title by adverse possession"). The relevant prescriptive period is twenty years. See HRS § 669-1(b) (1993) ("Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years.").

A prescriptive easement confers rights in land that "are measured and defined by the use made of the land giving rise to the easement[,]" and unlike adverse possession, does not operate "to divest title to the land at issue." 25 Am. Jur. 2d Easements and Licenses § 39 (West 2015). In other words, "the right to use an easement acquired by prescription cannot exceed the use which was made during the prescriptive period, and an easement holder is not entitled to materially alter the scope or character of its easement." 25 Am. Jur. 2d Easements and Licenses § 66 (West 2015) (footnote omitted).

Similarly, "[o]nce dedicated for a particular purpose," an easement by implied dedication "may not be taken for another purpose." 59 Am. Jur. 2d Parks, Squares, and Playgrounds § 14 (West 2015). An easement by implied dedication may arise when one

> permits the public to use his or her land for a long period[.] . . . There must be an offer and acceptance of dedication. . . . [T]he offer may be implied under the circumstances and the acceptance may also be implied by the nature of the public use. In other words, the duration and type of public use can raise both the presumption of the owner's intent (or offer) to dedicate land to public use, as well as constitute acceptance by the public.

Application of Banning, 73 Haw. 297, 304-05, 832 P.2d 724, 728-29 (1992) (citations and internal quotation marks omitted).

Moreover, if "continuous adverse public use" is "the only evidence of dedication," it must be "unopposed and acquiesced in for a period longer than the prescriptive period to infer public dedication." Id. at 308, 832 P.2d at 730. (emphases omitted). Exactly how much longer than the prescriptive period, however, is not settled. Id. The relevant prescriptive period is twenty years. Id. at 309, 832 P.2d at 731 (citing HRS § 657-31 (1993), which provides that "No person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued.").

In addition, pursuant to HRS § 520-7 (2006 Repl.), when the public use of the land is for recreational purposes, the prescriptive period must commence prior to 1969 for any type of easement to arise. See HRS § 520-7 ("No person shall gain any rights to any land by prescription or otherwise, as a result of any usage thereof for recreational purposes as provided in this chapter."). See also Banning, 73 Haw. at 309, 832 P.2d at 731 (holding that an easement by implied dedication was not established when the only evidence of dedication was the general public's use of a footpath for beach recreational purposes on a regular and continuous basis from 1968 to 1988). Additionally, "[a] permissive use of a right of way will not create an easement, however long continued." Tagami v. Meyer, 41 Haw. 484, 488 (Haw. Terr. 1956).

22

Here, the owners' offer to dedicate the Seawall to public use and the State's acceptance of that offer can be implied from the circumstances from well before 1969 to 2006. The owners' offer can be implied by the testimony of Anderson that to the best of her knowledge, no owner of the Seawall ever exercised control over the Seawall or blocked any member of the public from using the Seawall since she started using the Seawall as a walkway and observing the public doing the same in 1956 (i.e., fifty-five years before the 2011 bench trial). Gentry testified that to the best of his knowledge since he moved to the Gold Coast in 1982, the owners of the Seawall had acquiesced to the public's use of the Seawall for recreational purposes related to the ocean and never blocked the public from using the Seawall. The circuit court found, and the parties do not dispute, that the "public has used the Seawall for both shoreline and ocean access for decades and has done so without any apparent interference from any private landowners along the Gold Coast."

The State's acceptance of the owners' offer to dedicate the Seawall to public use can be implied from the public's open and continuous non-permissive use[10] of the Seawall as a walkway from as early as 1956; the State's recognition of the Seawall as a public walkway for recreational purposes in 1960 with respect to the portion of the Seawall on the makai boundary of AOAO 3019; the State's recognition of the entire Seawall as a public walkway in 1975, 1982, 1984, 1992, and 2006; and the State's repairs to portions of the Seawall in 1982, 1984, and 1993.

Therefore, the circuit court did not err in concluding that the State "has an easement over and across the Seawall by implied dedication" because Gold Coast sufficiently established that (1) the owners of the Seawall made an offer of dedication as early as 1956, and (2) the State accepted the owners' offer through the public's use of the Seawall since at least 1956, the State's recognition of the Seawall as a public walkway since 1960, and the State's repairs to the Seawall since 1982.

---

[10] No evidence was presented to suggest the public ever requested or received permission from any of the owners of the Seawall before accessing the Seawall for recreational purposes.

Because the State has a duty to keep the Seawall in repair via its easement by implied dedication, it is unnecessary to address whether or not the circuit court erred in concluding that the State acquired an easement by prescription. See Levy v. Kimball, 50 Haw. 497, 498, 443 P.2d 142, 144 (1968) (holding "that an owner of and [sic] easement has the right and the duty to keep it in repair" and "is liable in damages for injuries caused by failure to keep the easement in repair").

**D.    The State acquired ownership of the portions of the Seawall on non-registered land and the land under those portions by surrender.**

In its Final Judgment, the circuit court held that the State owns the Seawall "and the real property under the Seawall by surrender except as to the portions of the Seawall . . . [that] are on privately owned land registered in the Land Court."

> HRS § 264-1(c) provides in relevant part:
>
> **§264-1 Public highways and trails.**
>
> . . . .
>
> (c) All roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or built by private parties and dedicated or surrendered to the public use, are declared to be public highways or public trails as follows:
>
> . . . .
>
> (2)    Surrender of public highways or trails shall be deemed to have taken place if no act of ownership by the owner of the road, alley, street, bikeway, way, lane, trail, or bridge has been exercised for five years . . . .

A seawall that "is used as a public thoroughfare" may qualify as a "public trail" or "public highway" under HRS § 264-1(c). See Levy, 50 Haw. at 499-500, 443 P.2d at 144-45 (holding that under the predecessor of HRS § 264-1(c), which is identical to HRS § 264-1(c) except it lacks the term "trails," a seawall that is used as a public thoroughfare qualifies as a "public highway" even though not expressly mentioned in the statute). A seawall on land registered in land court, however, is not subject to surrender. See HRS § 501-87 (2006 Repl.) (providing that land registered in land court is not subject to surrender, adverse possession, or prescription). Under HRS § 264-2 (2007 Repl.),

24

once a seawall is determined to be a "public highway," the seawall "and the land, real estate and property of the same" are owned by "the government in fee simple."

Here, it is undisputed that the Seawall was built by private parties and completed by 1930, the Seawall was dedicated to public use as evidenced by the public's open and consistent non-permissive use of the Seawall since at least 1956, and no owners of the Seawall exercised ownership over the Seawall for at least five years prior to litigation. Therefore, the circuit court did not err in concluding that the State acquired ownership of the Seawall "and the real property under the Seawall by surrender except as to the portions of the Seawall . . . [that] are on privately owned land registered in the Land Court."

**E.    The State's consent is not required to establish an easement by implied dedication or a public highway by surrender.**

Because the State's argument that neither an easement by implied dedication nor a public highway by surrender may be established without the State's consent under HRS § 171-30, HRS § 26-7, and HRS § 107-10 was raised for the first time on appeal, whether to address the argument is within our discretion. State v. Moses, 102 Hawai‘i 449, 456, 77 P.3d 940, 947 (2003) (holding that "in both criminal and civil cases" and unless justice requires, an appellant waives an argument on appeal if he did not raise it at trial).

"[T]he fundamental starting point for statutory-interpretation is the language of the statute itself. . . . [W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." First Ins. Co. of Hawai‘i v. A&B Prop., 126 Hawai‘i 406, 414, 271 P.3d 1165, 1173 (2012) (quoting State v. Wheeler, 121 Hawai‘i 383, 390, 219 P.3d 1170, 1177 (2009)). The statutory language of HRS §§ 171-30, 26-7, and 107-10 are plain and unambiguous: (1) HRS § 171-30(a)(1)[11] makes BLNR responsible

---

[11]    HRS § 171-30(a)(1) provides that the Board of Land and Natural Resources (**BLNR**) "shall have the exclusive responsibility, except as provided herein, of acquiring, including by way of dedications: (1) All real property or any interest therein and the improvements thereon, if any, required by the State for public purposes[.]

for "[a]ll real property or any interest therein" acquired by the State; (2) HRS § 26-7[12] requires the Department of the AG to approve "all documents relating to the acquisition of any land or interest in lands by the State"; and (3) HRS § 107-10[13] places a final check via the Attorney General on the acquisition of land initiated "by the State or any department, agency, board, commission, or officer thereof[.]"  The State's argument that these statutory provisions require the State to consent to easements by implied dedication or public highways by surrender is without merit.  Both doctrines are well established means for the public to acquire state land without the State's consent via public use.  The State's interpretation of HRS §§ 171-30, 26-7, and 107-10 is not only inconsistent with the language of the statutes, but if adopted, would produce an absurd result in that it would silently abolish the doctrines of implied dedication and surrender.  See State v. Burgo, 71 Haw. 198, 202, 787 P.2d 221, 223 (1990) (holding that a statute may not be interpreted "in a manner which produces an absurd result").

## F.    The Kalakaua Group's appeal

The Kalakaua Group contends the circuit court abused its discretion in denying their motion for attorneys' fees and costs because (1) sovereign immunity is not implicated in this case, (2) the circuit court may award reasonable attorneys' fees and costs when justice requires, (3) the Kalakaua Group is entitled to recovery of reasonable attorneys' fees under the private attorney general doctrine, and (4) the Kalakaua Group is

_____

[12]    HRS § 26-7 provides that the Department of the Attorney General (**Department of the AG**) "shall administer and render state legal services, including . . . approve as to legality and form all documents relating to the acquisition of any land or interest in lands by the State[.]"

[13]    HRS § 107-10 (Supp. 2001) provides, in relevant part:

§107-10 Acquiring if real property; prior approval.  No real property or any right, title, or interest therein shall be acquired by agreement, purchase, gift, devise, eminent domain, or otherwise, for any purpose, by the State or any department, agency, board, commission, or officer thereof, without the prior approval of the [Department of the AG] as to form, exceptions, and reservations.

entitled to costs under HRS § 607-24.

The State answers that the circuit court did not err because (1) the State did not waive its sovereign immunity as to attorneys' fees; (2) Gold Coast was not the prevailing party; (3) the Kalakaua Group was not entitled to attorneys' fees under the private attorney general doctrine; (4) even if the Kalakaua Group was entitled to attorneys' fees, the amount awarded must be significantly reduced; and (5) the Kalakaua Group is not entitled to costs.

The circuit court denied the Kalakaua Group's motion for attorneys' fees and costs based on its conclusion that the "State has not waived its sovereign immunity." The circuit court erred in this regard because "the doctrine of sovereign immunity is unavailing and inapposite" when the "case deals with a suit initiated by the State[.]" State ex rel. Anzai v. City and Cnty. of Honolulu, 99 Hawai'i 508, 515-16, 57 P.3d 433, 440-41 (2002). The State waived its sovereign immunity when it filed its own action for declaratory judgment against the owners of the properties bordering the Seawall and requested and was granted consolidation.

As to costs, the circuit court erred in denying the Kalakaua Group's motion because the Gold Coast prevailed against the State.

HRS § 607-24 (1993) provides, in relevant part:

In all cases in which a final judgment or decree is obtained against the State, . . . any and all deposits for costs made by the prevailing party shall be returned to the prevailing party, and the prevailing party shall be reimbursed by the State . . . all actual disbursements, not including attorney's fees or commissions, made by the prevailing party and approved by the court.

## IV.  CONCLUSION

The Circuit Court of the First Circuit's Final Judgment entered February 3, 2014 and "Findings of Fact, Conclusions of Law, and Order" entered November 29, 2013 are affirmed. The May 13, 2014 "Order Denying Plaintiff Gold Coast Neighborhood Association Etal's Motion for Attorneys' Fees and Costs Filed February 18, 2014," also entered in the First Circuit of the First Circuit, is vacated and remanded for consideration of the

27

Kalakaua Group's motion for attorney fees and the award of costs to the Kalakaua Group.

On the briefs:

William J. Wynhoff
Deputy Attorney General
for Defendant/Plaintiff/
Appellant/Cross-Appellee
State of Hawai'i.

Robert G. Klein
Randall K. Schmitt
Jordon J. Kimura
Troy J.H. Andrade
(McCorriston Miller Mukai
MacKinnion)
for Plaintiff/Appellee/Cross-
Appellant Gold Coast
Neighborhood Association and
Defendants/Appellees/Cross-
Appellants Tropic Seas, Inc.;
The Association of Apartment
Owners of Diamond Head Beach,
Inc.; Diamond Head Apartments,
Ltd.; CS Apartments, Ltd.; The
Association of Apartment
Owners of 2987 Kalakaua
Condominium; Tahitienne,
Incorporated; The Association
of Apartment Owners of 3003
Kalakaua, Inc.; and The
Association of Apartment Owners
of 3019 Kalakaua, Inc.

Stephen K.C. Mau
(Rush Moore)
for Defendant/Appellee/Cross-
Appellee Diamond Head
Ambassador Hotel, Ltd.