DISSENTING OPINION BY
NAKAYAMA, J.
IN WHICH RECKTENWALD, C.J., JOINS
I. INTRODUCTION
Almost a century ago, unknown private parties built a seawall on the makai boundary of private property fronting Diamond Head in order to protect their property from high waves and erosion. Since then, the seawall has been all but abandoned by the property owners, used by the public as a thoroughfare, and infrequently repaired by the State. However, at all times since its construction, the seawall has continued to serve its primary pmqjose—the protection of private property. The specific issue before this court is whether the State is responsible for the seawall’s upkeep and maintenance.
The Majority holds that the State has an easement over the seawall pursuant to implied dedication, and is thus responsible for its maintenance and repair. I disagree with this holding and would conclude instead that, under the facts of this case, private property rights in ways or trails cannot be dedicated or surrendered to the State without the State’s formal approval. As such, I would hold that the State does not own and is not responsible for the seawall. For this reason, I respectfully dissent from sections IV.B-C of the Majority’s opinion.
II. BACKGROUND
Nearly a century ago, unknown private parties built a seawall on the makai boundary of private property fronting Diamond Head. The primary purpose of the seawall was to “protect land and upland property from damage by waves in areas of high wave action, with incidental functions as a retaining wall or bulkhead.” There is no indication that the seawall has ceased to serve this primary purpose—protection of private property.
However, approximately sixty-five years ago, the seawall started serving a secondary purpose, as a “thoroughfare for public travel” along the Waikiki coastline. Multiple people, Gold Coast members and the general public alike, testified that the public uses the seawall as a walkway, traversing it in order to access the ocean or walk along the coastline. For instance, June Anderson, a Gold Coast member, testified that she has lived in her home bordering the seawall for over thirty-seven years, has used the seawall as a pathway for over fifty-five years, and has observed the public using the seawall as a walkway throughout this time; Robert Gentry, a Gold Coast member, testified that he has lived in his home bordering the seawall since 1982 and that he has “observed members of the public us[ing] the Diamond Head Seawall as a walkway and for recreational purposes on a continuous basis,” and; Guy Bishaw, a Waikiki resident, testified that he has used the seawall for over forty years to access offshore surfing spots.
Starting in the 1980s, the State began to periodically repair sections of the seawall. These repairs included: emergency repair work to shore approximately forty feet of the seawall, rehabilitation of broken sections, surface repair work, construction of handrails along some portions of the seawall, and emergency rehabilitation of portions of the seawall following Hurricane Iniki. Funds for this work were authorized by the State legislature.
In 2006, Gold Coast requested two million dollars from the State legislature in order to repair and improve the seawall. The legislature appropriated the requested funds for “plans, design and construction for the resurfacing of the seawall and installation of railings along Waikiki’s Gold Coast.” However, the funds were never released because the Department of Land and Natural Resources *469 (DLNR) disputed that it had the responsibility to maintain and repair the seawall.
On June 22, 2007, Gold Coast filed a complaint against the State, requesting declaratory relief over a “dispute between the GCNA and the State of Hawai'i pertaining to whether the State has the duty to maintain in good and safe condition a long stretch of seawall on the Waikiki coastline along Kala-kaua Avenue in the City and County of Honolulu, State of Hawai'i.” In turn, the State sought a delcaration that “it does not own the seawalls or the real property under the seawalls and ... does not have an easement by prescription or implication over the seawalls.”
In 2014, the Circuit Court of the First Circuit (circuit court) concluded that “the State owns the Seawall and the real property under the Seawall by surrender and/or has an easement across the Seawall by implied dedication.” The Intermediate Court of Appeals (ICA) affirmed the circuit court’s conclusion in this regard. Gold Coast Neighborhood Ass’n v. State, 136 Hawai'i 340, 361 P.3d 1243 (App. 2015).
III. STANDARDS OF REVIEW
A. Statutory Interpretation
The interpretation of a statute is a question of law that we review de novo. State v. Kotis, 91 Hawai'i 319, 327, 984 P.2d 78, 86, reconsideration denied (1999). Similarly, a trial court’s conclusions of law are reviewable de novo under the right/wrong standard. State v. Lopez, 78 Hawaii 433, 440, 896 P.2d 889, 896 (1995). Under the de novo standard, [the appellate] court must examine the facts and answer the pertinent question of law without being required to give any weight or deference to the trial court’s answer to the question. Id. In other words, we are free to review a trial court’s conclusion of law for its correctness. Id.
State v. Kelekolio, 94 Hawai'i 354, 356, 14 P.3d 364, 366 (App. 2000).
The Hawai'i Supreme Court has repeatedly stated that, when interpreting a statute, an appellate court’s
foremost obligation is to ascertain and give effect to the intention of the legislature^] which is to be obtained primarily from the language contained in the statute itself. Hurip, 76 Hawai'i at 216, 873 P.2d at 95 (citations omitted). And “where the language of the statute is plain and unambiguous, [a court’s] only duty is to give effect to [the statute’s] plain and obvious meaning.” Ing v. Acceptance Ins. Co., 76 Hawai'i 266, 270, 874 P.2d 1091, 1095 (1994).
State v. Wells, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995). Accordingly,
we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
In construing an ambiguous statute, “[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their trae meaning.” HRS § 1-15(1)[ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
... [The appellate] court may also consider “[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning.” HRS § 1-15(2) (1993). “Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.” HRS § 1-16(1993).
State v. Young, 107 Hawai'i 36, 39-40, 109 P.3d 677, 680-81 (2005).
IV. DISCUSSION
In essence, the question raised by this case is whether private property rights may be dedicated or surrendered to the State without the State’s formal consent. The Majority holds that they can and specifically concludes that the State acquired an easement over the seawall through common law implied dedication. The Majority further concludes that the seawall was not surrendered to the State.
*470 Instead, I would conclude that the disposition of the seawall is governed by a clear statutory framework under Hawaii Revised Statutes (HRS) § 264-1, which provides for the dedication and surrender of privately built ways and trails to the State. Pursuant to the clear and unambiguous language of HRS § 264-1 and accompanying statutes, I would hold that private property rights in ways or trails may not be dedicated or surrendered to the State without the State’s formal approval and that, under the facts of this case, the State did not acquire any property rights in the seawall.
A. The Seawall Is A Way Or Trail Pursuant To HRS § 264-1.
HRS § 2644(c) (2007), entitled “[p]ublic highways and trails,” provides for the dedication and surrender of privately built “roads, alleys, streets, ways, lanes, trails, bikeways, and bridges” to the public. The following two sections provide a historical background of the statute and an analysis of its applicability to seawalls.
1. History and purpose of HRS § 264-1
Prior to the Mahele of 1848,[1] all land, including roads, in the Kingdom of Hawaii belonged to the people through the sovereign. See State v. Zimring, 58 Haw. 106, 111, 566 P.2d 725, 729 (1977) (noting that the Constitution of 1840 provided that “all the land from one end of the Islands to the other” belonged to Kamehameha I, “though it was not his own private property.” Instead, it “belonged to the chiefs and the people in common”); Susan E. Jaworowski, Roads in Limbo: An Analysis of the State-County Jurisdictional Dispute 8, Legislative Reference Bureau Report No. 11 (1989).
After the Mahele, “private roads could be constructed on private property, [but] roads that were formerly public remained so.” Ja-worowski, supra, at 8. In 1892, Queen Lili'uokalani and the legislative assembly of the Kingdom of Hawaii enacted “The Highways Act, 1892.” 1892 Haw. Sess. Laws Act 47, § 1 at 68-75; Jaworowski, supra, at 8. Among other things, The Highways Act defined “public highways” and set requirements for private persons to dedicate highways to the Kingdom. 1892 Haw. Sess. Laws Act 47, §§ 2-3 at 68-69. Significantly, the Act required that the Minister of Interior accept or adopt roads dedicated or surrendered by private parties:
Any road, alley, street, way, lane, court, place, trail or bridge laid out, constructed, opened or maintained by individuals or corporations as a highway, may become a public highway by dedication or abandonment, or surrender thereof to general use by such individual or corporation; provided that the same shall be accepted or adopted by the Minister of Interior.
1892 Haw. Sess. Laws Act 47, § 3 at 68-69 (emphases added).
Over the decades since its inception, The Highways Act has had many iterations and is currently codified as HRS § 264-1, “[p]ublic highways and trails.” At the time this litigation was initiated, HRS § 264-1 (2007)[2] was segmented into four subsections: subsection (a) defined public highways and divided public highways into two categories, state and county highways; subsection (b) defined public trails and provided that trails were under the jurisdiction of the State Board of Land and Natural Resources (BLNR), unless the trail was created by or dedicated to a specific county; subsection (c) provided two mechanisms—dedication and surrender—-for private parties to transfer private roads or trails to the State or county, and; subsection (d) provided rules for the State and counties in disposing of public highways and trails, The full text of HRS § 264-1 reads as follows:
HRS § 264-1, Public highways and trails.
(a) All roads, alleys, streets, ways, lanes, bikeways, bridges in the State, opened, laid out, or built by the government are *471 declared to be public highways. Public highways are of two types:
(1) State highways, which are all those under the jurisdiction of the department of transportation; and
(2) County highways, which are all other public highways.
(b) All trails, and other nonvehicular rights-of-way in the State declared to be public rights-of-ways by the Highways Act of 1892, or opened, laid out, or built by the government or otherwise created or vested as nonvehicular public rights-of-way at any time thereafter, or in the future, are declared to be public trails. A public trail is under the jurisdiction of the state board of land and natural resources unless it was created by or dedicated to a particular county, in which case it shall be under the jurisdiction of that county.
(c) All roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or built by private parties and dedicated or surrendered to the public use, are declared to be public highways or public trails as follows:
(1) Dedication of public highways or trails shall be by deed of conveyance naming the State as grantee in the case of a state highway or trail and naming the county as grantee in the case of a county highway or trail. The deed of conveyance shall be delivered to and accepted by the director of transportation in the case of a state highway or the board of land and natural resources in the case of a state trail. In the case of a county highway or county trail, the deed shall be delivered to and accepted by the legislative body of a county.
(2) Surrender of public highways or trails shall be deemed to have taken plaee if no act of ownership by the owner of the road, alley, street, bikeway, way, lane, trail, or bridge has been exercised for five years and when, in the ease of a county highway, in addition thereto, the legislative body of the county has, thereafter, by a resolution, adopted the same as a county highway or trail.
In every case where the road, alley, street, bikeway, way, lane, trail, bridge, or highway is constructed and completed as required by any ordinance of the county or any rule, regulation, or resolution thereof having the effect of law, the legislative body of the county shall accept the dedication or surrender of the same without exercise of discretion.
(d)All county public highways and trails once established shall continue until vacated, closed, abandoned, or discontinued by a resolution of the legislative body of the county wherein the county highway or trail lies. All state trails once established shall continue until lawfully disposed of pursuant to the requirements of chapter 171.
Notably, HRS § 264-1 preserved dedication and surrender from The Highways Act as methods for private roads or trails to be transferred to the State or counties.
While this case was pending before this court, HRS § 264-1 was substantially amended again, this time during the 2016 legislative session. With regards to dedication, both HRS § 264-1 (2007) and (Supp. 2016) expressly provide that a deed of conveyance shall be delivered to and accepted by the appropriate State or county authority in order for the private property rights to be dedicated to the State or county. However, under its present iteration,[3] HRS § 264-1 (Supp. 2016) does not provide for surrender of private roads or trails to the State or county; instead, this statute provides, inter *472 alia, that private owners of roads or trails may petition the county to begin condemnation proceedings. As such, the present version of HRS § 264-1 (Supp. 2016) no longer provides for the surrender of private ways or trails to the public.
As the following section explains, although not specifically listed within HRS § 264-l(c), the seawall at issue in the current case falls within the statute’s authority.
2. Applicability of HRS § 264-Kc) to the seawall
HRS § 2644(c) governs the disposition of the seawall in this case. HRS § 2644(c) provides that “[a]Il roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or built by private parties and dedicated or surrendered to the public use, are declared to be public highways or public trails.” (Emphasis added.) Thus, in order to fall within the ambit of HRS § 2644(c), the structure at issue must be: 1) built by private parties, and 2) considered either a road, alley, street, way, lane, trail, bikeway, or bridge. Here, under the first factor, it is undisputed that the seawall “was built by unknown private parties” almost a century ago. And, under the second factor, this court in prior cases has specifícal *473 ly included seawalls within the purview of HRS § 2644(e) if the seawall is used as a public thoroughfare.
For instance, in Levy v. Kimball, 50 Haw. 497, 443 P.2d 142 (1968), a woman was injured when she fell from a Waikiki seawall while walking along its surface. The State had an express easement for the purpose of public travel over the seawall, and this court determined that, because of this express easement, the State had “the right and the duty to keep it in repair.” Id. at 498, 443 P.2d at 144. In addition, this court focused on the State’s responsibility for the seawall under Revised Laws of Hawaii 1955, Sec. 142-1, an earlier iteration of HRS § 264-1. Id. at 499, 443 P.2d at 144. This court determined that “[although a seawall is not expressly mentioned in the above enumeration, it can be fairly implied that a seawall such as that which is in question here which is used as a public thoroughfare is included in the term ‘public highwasy’ [sic].” Id. As such, this court noted that the State’s duty to maintain a highway includes, inter alia, “a duty to maintain the surface of the highway in a condition reasonably safe for travel.” Id. at 499, 443 P.2d at 144-45 (quoting Restatement (Second) of Torts § 349 (Am. Law Inst. 1965)).
More recently, in In re Banning, 73 Haw. 297, 312, 832 P.2d 724, 732 (1992), this court reiterated that a seawall can fit within the definition of “public highway” articulated in HRS § 264-1: “In Levy v. Kimball, ... a seawall used by the public as a thoroughfare was considered to fit within the definition of ’public highway1 although it was not expressly defined as such in the Revised Laws of Hawaii 1955, § 142-1, which was the predecessor to the present HRS § 264-1.” As such, the Banning court reaffirmed the conclusion in Levy that a seawall is a public highway if it is used as a thoroughfare by the public. Thus, Hawaii law clearly places seawalls that are used as public thoroughfares within the ambit of ways and trails as articulated by HRS § 2644(c).[4]
In this case, it is undisputed that the seawall has been used for decades by the public as a path to access the beach. Testimony from June Anderson, Robert Gentry, and Guy Bishaw evidences that the public has used the seawall as a walkway for decades. The Majority, too, describes the seawall as a public thoroughfare that “residents and visitors of 0‘ahu have been free to walk along ... to access the beach, shoreline, and ocean in order to swim, surf, fish, and enjoy other activities of island living.” As such, because the seawall in this case is also a public thoroughfare, I would hold that its disposition is governed by HRS § 264-1.
Despite the clear language of our case law, the Majority insists that Levy and Banning actually require that, for a seawall to fall under HRS § 264-1, the State must hold “a preexisting express easement for the specific purpose of opening up a pathway for public travel.” I disagree with this reading of the case law, and maintain that neither case expressly states that such a requirement is necessary under HRS § 264-1. In Levy, this court concluded that “[although a seawall is not expressly mentioned in the above enumeration, it can be fairly implied that a seawall such as that which is in question here which is used as a public thoroughfare is included in the term ‘public highwasy1 [sic].” 50 Haw. at 499, 443 P.2d at 144. The Majority takes the phrase “a seawall such as that which is in question here” to mean a seawall that the State already holds an express easement over. However, such a reading ignores the rest of the sentence immediately succeeding the phrase at issue: “a seawall such as that which is in question here which is used as a public thoroughfare[.]” The underlined phrase is a non-restrietive relative clause, meaning that it defines the antecedent noun—the seawall. See William Strunk Jr. & E.B. White, The Elements of Style 3-4 (3d ed. 1979). Notably, this non-restrictive rela *474 tive clause does not contain information about the necessity of an express easement; instead, it explains that, in order for a seawall to fall within HRS § 264-1, it needs to be used as a public thoroughfare. Thus, the Majority’s reading of the ruling in Levy is not supported by the plain language of the sentence at issue, or its grammatical structure.
Similarly, the Majority’s interpretation of Banning is not supported by the language of the case. The Majority points out that the Banning court noted that “unlike the situation here, at the time of the trip and fall on the seawall in Levy, the State already held an easement in favor of the general public for use of the seawall as a path of travel.” 73 Haw. at 312, 832 P.2d at 732.1 disagree with the Majority’s contention that the Banning court determined that an express easement is necessary for a seawall to be considered under HRS § 264-1. Instead, the Banning court was attempting to distinguish the facts in Banning, where there was no trail “opened, laid out, or built by private parties,” from the facts in Levy, where the easement in favor of the general public was evidence that the seawall was built by private parties and used as a path of travel by the public. Banning, 73 Haw. at 312, 832 P.2d at 732 (“HRS § 264-1 applies to trails which are either ‘opened, laid out, or built by private parties.’ (Emphasis added.) Here, the trustees did not build or lay out a trail to the general public.”).
As such, the Majority’s reliance on Levy and Banning for its contention that seawalls, separate and apart from other thoroughfares, must have an express easement in favor of the public in order to fall under HRS § 264-1 is misplaced. Neither case states that this is a requirement for seawalls to be considered under the statute.
B. The Seawall Was Not Dedicated To The State.
The Majority concludes that the State has an easement over the seawall through common law implied dedication. I disagree with this conclusion and would hold instead that, as a way or trail, the seawall can only be dedicated to the State by fulfilling the requirements of HRS § 2644(c)(1).
1. Dedication pursuant to HRS § 264-1(c)(1)
The plain language of HRS § 2644(c)(1) provides a formal process for the dedication of private ways or trails as public highways. The statute states that all ways, trails, etc. built by private parties can be dedicated as public highways or public trails as long as there is: a “deed of conveyance naming the State as grantee in the case of a state highway or trail,” deliverance of the deed to the Director of Transportation or the BLNR, and acceptance by the Director of Transportation or the BLNR. Notably, the language of the statute plainly and unambiguously states that dedication of ways and trails to the public can only be done through a deed of conveyance: “Dedication of public highways or trails shall be by deed of conveyance ...” (Emphasis added.)
In this case, there is nothing in the record to indicate that there was a deed of conveyance naming the State as a grantee for the disputed portions of the seawall. Likewise, the record does not evidence that a deed was delivered to and accepted by the BLNR. In fact, it appears to be undisputed that there was no formal delivery or acceptance of a deed of conveyance for the seawall. Thus, the seawall was not dedicated to the State under the requirements of HRS § 2644(c)(1).
2. Common law implied dedication
The Majority concludes that the State has an easement over the seawall through common law implied dedication. In so doing, the Majority places special importance on the sporadic and disparate case law relating peripherally, but never directly, to the issue at hand. I disagree with this approach and ultimate conclusion for the following reasons.
a. HRS § 2644(c)(1) abrogates common law dedication with respect to private ways and trails.
First, while I agree with the Majority that the abrogation of common law is generally *475 disfavored,[5] I assert that common law implied dedication, as applied to private ways and trails, is abrogated by the express language of HRS § 264-l(c)(l). The statute provides that “[a]ll roads, alleys, streets, ways, lanes, trails, bikeways, and bridges in the State, opened, laid out, or built by private parties and dedicated or surrendered to the public use, are declared to be public highways or public trails as follows.” (Emphasis added.) The statute then provides two methods for transferring the private property to the State, through dedication and surrender. Under the dedication subsection, the statute provides “[djedication of public highways or trails shall be by deed of conveyance naming the State as grantee.... The deed of conveyance shall be delivered to and accepted by ... the board of land and natural resources in the case of a state trail.” (Emphases added.)
The statutory language is clear and unambiguous: the only way to dedicate a private way or trail to the public is through a deed of conveyance. See Shall, Black’s Law Dictionary (10th ed. 2014) (defining shall as, “[h]as a duty to; more broadly, is required to” and noting that “[tjhis is the mandatory sense that drafters typically intend and that the courts typically uphold"). Although the statute does not state that implied dedication is abolished as it applies to ways and trails, the sensible interpretation of the statute’s express language—limiting dedication to instances where deeds of conveyance are delivered and accepted—has that result. See Minneapolis Fire & Marine Ins. Co. v. Matson Navigation Co., 44 Haw. 59, 67, 352 P.2d 335, 340 (1960) (“Although a rule of strict construction is applied to a statute in derogation of the common law, it should nevertheless be construed sensibly and in harmony with the purpose of the statute, so as to advance and render effective such purpose and the intention of the legislature.”).
b. Hawai‘i courts have never applied implied dedication to transfer interests in private ways or trails to the State.
Second, Hawai'i courts have not applied implied dedication to public highways, and have instead relied exclusively on the express language found in HRS § 2644(c)(1) when determining whether private land may become a public highway.[6] For example, in Maui Ranch Estates Owners Ass’n v. Maui Cty., 6 Haw. App. 414, 724 P.2d 118 (1986), the ICA addressed whether a private road could become a public highway under the theory of implied dedication. An association of landowners brought suit against Maui County claiming that, under the theory of implied dedication, a section of the road had become a county highway because the county had maintained and repaired the road for over sixty years. Id. at 416-18, 724 P,2d at 120-22. The ICA disregarded this argument, holding that “the doctrine of common law dedication does not convert a private roadway into a county highway.” Id. at 421, 724 P.2d at 123. The ICA noted that, while common law dedication can be accomplished impliedly, “before the municipality can be held *476 responsible for maintenance, repair, and liability there must be unequivocal acceptance by the municipality.” Id. (citing Kelly v. City of Bethany, 588 P.2d 567 (Okla. 1978)).
In making this decision, the ICA looked to HRS § 264-1 (1985) and determined that the statute’s language pertaining to dedication plainly required express acceptance on the part of the county, even if other actions by the county might imply acceptance:
Association argues, however, that although there was no official resolution by the council, acceptance was evidenced by the fact that County employees maintained and repaired the road from 1919 to 1981, and it was registered on their “Index of County Roads” until the latter date. They argue that these acts by County employees manifested acceptance of [the road] as a county road.
However, under HRS § 264-1 only the county council is authorized to accept dedication of a private road. The acts of County’s employees are not evidence of the council’s acceptance. See Santos v. Perreira, supra. A municipality’s legislative body can only act officially through ordinance or resolution or by voting on a motion made at a council meeting. Life of the Land v. City and County of Honolulu, 61 Haw. 390, 423, 606 P.2d 866, 887 (1980).
Id. at 422, 724 P.2d at 124. The ICA explained that HRS § 264-1 “adopts the common law principle that a private roadway may be surrendered or abandoned to public use,” but that “the roadway does not become a county highway unless and until it is accepted by the legislative body.” Id. at 422, 724 P.2d at 123.
Similarly, in Wemple ex rel. Dang v. Dahman, 103 Hawai'i 385, 392-93, 83 P.3d 100, 107-08 (2004) (Wemple II), this court held that “HRS § 264-1 (Supp. 1990) prevents a private road from becoming a ‘county highway’—and thereby subjecting the county to liability for injuries incurred thereon—without express acceptance of the private road by the County Council.” In Wemple, a child was struck by a car on a private road in the Kapahulu area, and the mother of the child brought a negligence action against the owners of the private road. The ICA held that the owners of the private road were not liable because the road had “been impliedly dedicated to the general public as a road easement, is subject to state and county traffic control regulations, and is maintained or repaired by the county[.]” Wemple ex rel. Dang v. Dahman, 102 Hawai'i 27, 30, 72 P.3d 499, 502 (App. 2002) (Wemple I), rev’d, 103 Hawaii 385, 83 P.3d 100 (2004). In coming to this conclusion, the ICA determined that “a privately owned road that has not been statutorily dedicated ... to public use by technical compliance with HRS § 264-1 may still be impliedly dedicated ... to public use for a general roadway easement.” Id. at 53, 72 P.3d at 525.
This court reversed the ICA’s decision, holding that the private roadway was not a county highway for which the county was responsible for maintenance, repair, or liability. Specifically, this court held that the private roadway was not a county highway because “the County [had] not expressly accepted the private roadway as required by HRS § 264-l[.]” Wemple II, at 393, 83 P.3d at 108. Thus, this court refused to apply the theory of implied dedication to transfer a privately owned road to the county as a county highway.[7]
*477 Significantly, although both Maui Ranch and Wemple II discuss dedication as it applies to county highways, the same analysis is applicable to State highways. HRS § 264-1(c)(1) provides that both the county and the State must accept the deed of conveyance when there is a dedication of public highways or trails:
Dedication of public highways or trails shall be by deed of conveyance naming the State as grantee in the case of a state highway or trail and naming the county as grantee in the ease of a county highway or trail. The deed of conveyance shall be delivered to and accepted by the director of transportation in the case of a state highway or the board of land and natural resources in the case of a state trail. In the case of a county highway or county trail, the deed shall be delivered to and accepted by the legislative body of a county.
(Emphasis added.) As such, the plain language of HRS § 2644(c)(1) provides the same dedication requirements for both the State and the county.
For these reasons, I disagree with the Majority’s conclusion that the seawall was impliedly dedicated to the State. I assert that the plain language of HRS § 2644(c)(1) and our case law clearly abrogate common law dedication with regard to private ways or trails.[8] Because the dedication requirements of HRS § 2644(c)(1) are not met, I would hold that the seawall was not dedicated to the State.
C. The Seawall Was Not Surrendered To The State.
The Majority concludes that the seawall was not surrendered to the State. I agree with this conclusion but not with the Majority’s analysis. As set out below, I conclude that, pursuant to HRS § 2644(c)(2) and accompanying statutes, the seawall could not be surrendered to the State without the State’s formal approval.
1. Surrender pursuant to HRS § 264-1(c)(2)
Unlike HRS § 2644(c)(1), which set out nearly identical requirements for dedication to both the State and the counties, HRS § 2644(c)(2) provided different requirements for surrender to the State and surrender to the counties. For both the State and the counties, private ownership of the highway or trail must have ceased for at least five years. *478 Additionally, but for the counties only, adoption through legislative resolution was required:
Surrender of public highways or trails shall be deemed to have taken place if no act of ownership by the owner of the road, alley, street, bikeway, way, lane, trail, or bridge has been exercised for five years and when, in the case of a county highway, in addition thereto, the legislative body of the county has, thereafter, by a resolution, adopted the same as a county highway or trail.
(Emphasis added.)
In its opinion, the ICA applied the elements of surrender, pursuant to HRS § 264-1(c)(2), to the seawall, and concluded that “it is undisputed that the Seawall was built by private parties and completed by 1930,” and that “no owners of the Seawall exercised ownership over the Seawall for at least five years prior to litigation.” Gold Coast Neighborhood Ass’n v. State, 136 Hawai'i 340, 356, 361 P.3d 1243, 1258 (App. 2016). Accordingly, the ICA held that the elements articulated in the statute had been met and that the State had acquired portions of the seawall through surrender. Id.
I conclude that the ICA gravely erred in this holding, but for different reasons than those relied upon by the Majority. Based on the legislative history of HRS § 264-1, the clear and unambiguous language of HRS §§ 171-30, 26-7, and 107-10, and Hawaii case law, I would hold that State approval is required before private ways or trails may be surrendered to the State. Significantly, the recent amendments reflect the legislature’s attempt to resolve issues similar to what this court is addressing in the current case, namely the transfer of private roads used by the public to government entities.
a. The legislative history of HRS § 264-1 supports a conclusion that State approval is required for surrender of private ways.
As noted in Section IV.A.1, The Highways Act of 1892 was the predecessor to HRS § 264-1, and provided for dedication, abandonment, and surrender of private roads to the public:
Any road, alley, street, way, lane, court, place, trail or bridge laid out, constructed, opened or maintained by individuals or corporations as a highway, may become a public highway by dedication or abandonment, or surrender thereof to general use by such individual or corporation; provided that the same shall be accepted or adopted by the Minister of Interior.
1892 Haw. Sess. Laws Act 47, § 3 at 68-69. Significantly, The Highways Act required that the Minister of the Interior accept or adopt any dedication or surrender of private roads, Id. When the Gold Coast litigation was initiated, HRS § 264-1 preserved this final approval requirement for both the State and the counties when private roads were dedicated to the public, but preserved final approval for the counties only, and not the State, when private roads were surrendered to the public.
However, in 2016, while this case was pending before this court, the legislature amended HRS § 264-1 again. Of significance for our analysis, one of the amendments to HRS § 264-1 omits the section on surrender entirely. In its place, a section on condemnation was added:
(2) Condemnation of public highways, roads, alleys, streets, ways, lanes, bike-ways, bridges, or trails initiated by the State or county pursuant to chapter 101, shall be by final order of condemnation by a court; provided that any private owner of a highway, road, alley, street, way, lane, bikeway, bridge, or trail may petition the mayor of the county in which the highway, road, alley, street, way, lane, bikeway, bridge, or trail is located to initiate condemnation proceedings if the highway, road, alley, street, way, lane, bikeway, bridge, or trail is part of a public road, ownership has not been exercised by limiting use or access, or the State or county has provided some form of maintenance to the highway, road, alley, street, way, lane, bikeway, bridge, or trail in the interest of the public; provided further that a private owner may only petition the mayor of a county after the dissolution of the roads commission established by Act 194, Session Laws of Hawaii 2016; provided further that *479 in every case where the highway, road, alley, street, way, lane, bikeway, bridge, or trail is constructed and completed as required by any ordinance of the county or any rule, regulation, or resolution thereof having the effect of law at the time of construction and completion, the highway, road, alley, street, way, lane, bikeway, bridge, or trail shall be exempt from meeting the construction standards in place at the time of condemnation by the State or county.
Of note, this amendment provides that the State and county may initiate condemnation proceedings, and that private owners of a way or trail may petition the mayor of his or her county to initiate condemnation proceedings. The mayor, at his or her discretion, may initiate condemnation proceedings if all of the listed requirements are met. Thus, these new amendments give the government more control over the road acquisition process than previously afforded in the earlier versions of HRS § 264-1.
The legislature explained that the purpose of this amendment was to resolve the confusing nature of the current road acquisition system:
The legislature finds that while federal, state, and county agencies maintain jurisdiction over, and are responsible for, the repaii’ and maintenance of the majority of highways, streets, and roads throughout Hawai'i, there are numerous roads throughout the State that are privately owned or whose ownership has been called into question.... This has resulted in questions regarding who is responsible for the repair and maintenance of these roads, many of which are regularly used for vehicular traffic.
The legislature further finds that since these private roads are not owned by a governmental entity, or their ownership is being disputed, they often do not receive proper repair and maintenance. Although these roads are often used by, and are of benefit to the public, the public does not realize that the road is not owned by a governmental agency. This creates difficulties for members of the public and government agencies when individuals report repair or maintenance issues.
The legislature also finds that while counties have policies and procedures to assist owners with the repair and maintenance of private roads, these policies and procedures are only applicable when the county can determine or locate the actual owner of the road. Additionally, the owners of private roads may seek government assistance because they may not have the expertise, equipment, or ability to coordinate services necessary to address road ownership and maintenance issues.
Finally, the legislature finds that the cost to bring many of these private roads up to code is very high and should not be borne solely by the counties.
The purpose of this Act is to provide a means to resolve the situation by, among other things:
(1) Establishing a temporary roads commission within the department of transportation to, among other things, review studies on disputes regarding private roads, provide an opinion on the ownership of certain private roads, advise the appropriate legislative body of the determination of ownership of the private road, and recommend action to the appropriate legislative body, including the initiation of condemnation proceedings as appropriate;
(2) Expanding the State and counties’ authority to condemn public roads;
(3) Allowing private owners of roadways to petition the mayor of the county in which the roadway is located to begin condemnation proceedings if certain conditions are met[.]
H.B. 2049, H.D. 2, S.D. 2, 28th Leg., Reg. Sess. (2016). Significantly, the recent amendments reflect the legislature’s attempt to resolve issues similar to what this court is addressing in the current case, namely the transfer of private roads used by the public to government entities.
While the recent amendments to HRS § 264-1 cannot be applied to this case, they do inform our understanding of the larger view of this legislation, which has gone through many iterations in its century of *480 existence. Our understanding of HRS § 264-1 is further informed by HRS §§ 171-30, 26-7, and 107-10, which, when read together, provide an additional element to the theory of surrender.
b. HRS §§ 171-30, 26-7, and 107-10 should be read in conjunction with the surrender statute articulated in HRS § 2644(c)(2).
This court utilizes the following standards when interpreting different statutes that relate to the same subject matter:
First, legislative enactments are presumptively valid and should be inteipreted in such a manner as to give them effect. Second, laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Third, where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.
Pofolk Aviation Haw., Inc. v. Dep’t of Transp., 136 Hawai'i 1, 6, 354 P.3d 436, 441 (2016) (quoting Gillan v. Gov’t Emps. Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008)).
HRS § 171-30 (1993) provides, in part, that: “The board of land and natural resources shall have the exclusive responsibili-⅛ except as provided herein, of acquiring, including by way of dedications: (1) All real property or any interest therein and the improvements thereon, if any, required by the State for public purposes ...” (Emphases added.) Similarly, HRS § 107-10 (Supp. 2001) grants the attorney general broad powers over State land acquisitions:
No real property or any right, title, or interest therein shall be acquired by agreement, purchase, gift, devise, eminent domain, or otherwise, for any purpose, by the State or any department, agency, board, commission, or officer thereof, without the prior approval of the attorney general as to form, exceptions, and reservations.
(Emphases added.)[9] Finally, HRS § 26-7 (1993) provides the State with a final check for land acquisitions: “The department of the attorney general shall ... approve as to legality and form all documents relating to the acquisition of any land or interest in lands by the State[.]”
These statutes, read individually and collectively, require State approval before land may be acquired by the State. Instead of conflicting with HRS § 264-1, these statutes are all on the same subject matter—acquisition of land by the government—and should be construed in reference to each other. In other words, HRS §§ 26-7, 171-30, and 107-10 should be construed as adding an additional or final element to the theory of surrender already articulated in HRS § 264-1(0(2).
Hawai'i courts have not considered how HRS §§ 26-7, 171-30, and 107-10 should be construed when private land is surrendered to the State. However, the Hawai'i ICA has held that private roads may not be surrendered to the State without State approval.
c. Hawai'i case law suggests that State approval is necessary for private roads to be surrendered to the State.
Santos v. Perreira, 2 Haw. App. 387, 633 P.2d 1118 (1981), directly addresses the issue of State approval for surrender of a highway to the State. The Santoses filed a complaint for injunctive relief against the Perreiras, seeking a judgment granting the Santoses an easement over the Perreira’s land. Id at 390, 633 P.2d at 1122. One of the theories ad- *481 vaneed by the Santoses was that the dirt road over which they were seeking an easement was a surrendered public road pursuant to HRS § 264-1. Id. The ICA rejected this theory, concluding that a public highway may only be surrendered to the State with the State’s acceptance:
The Santoses contended that under HRS [§ ] 264-1 (1976) a public highway may be surrendered to the state without the state’s acceptance. We disagree. A public highway is not a state highway unless it is designated for inclusion in the State Highway System under HRS [§ ] 264-41 (1976). All public highways which are not state highways are county highways or they are not public highways. See HRS [§ ] 264-1 (1976). A highway is not a county highway unless it is accepted or adopted as such by the county council. There is no evidence in the record of the designation, acceptance, or adoption of this road by the state or the county.
Id. In other words, the ICA concluded that a private road could not be surrendered to the State without the State designating—or approving—the surrendered road as a public highway.
In the present case, the circuit court addressed the holding in Santos, concluding that it “was overruled sub silentio by the Hawai'i Supreme Court’s decision in In re Application of Banning, 73 Haw. 297, 832 P.2d 724 (1992),” and that the State’s formal acceptance is not required in order to transfer ownership of land by surrender. However, Banning neither mentions Santos nor addresses, either directly or peripherally, the holding in Santos. Indeed, Banning does not consider a situation, such as the one presented in Santos or this ease, in which a private party is attempting to surrender land to the State and the State either has not formally approved the surrender or is opposed to the surrender. Additionally, Santos has never been explicitly overruled and is still considered controlling law.
Given the legislative history of HRS § 264-1, the element of State approval found in HRS §§ 171-30, 26-7, and 107-10, and the clear case law on point, I would hold that the seawall was not surrendered to the State. The Majority reaches the same conclusion, but through different means.
2. The Majority’s surrender analysis
The Majority concludes that the seawall was not surrendered to the State because the State did not hold a preexisting express easement over the seawall. I disagree with the Majority’s analysis for the following reasons.
First, I disagree with the Majority’s conclusion that the seawall does not fall under the purview of the surrender statute. Citing Levy and Banning, the Majority concludes that HRS § 264-l(c)(2) includes seawalls only when the seawall “is subject to a preexisting express easement in favor of the State clearly opening the seawall up as a pathway for public travel” and that the seawall at issue in this case is not subject to such an easement and therefore not subject to the statute. However, as noted in Section IV.A.2., such a requirement is absent from the statutory language and case law. Instead, Hawai'i case law clearly states that a seawall is considered under HRS § 264-l(c)(l)-(2) if the seawall is “used as a public thoroughfare.” Levy, 50 Haw. at 499, 443 P.2d at 144; Banning, 73 Haw. at 312, 832 P.2d at 732; see supra Section IV.A.2. As such, the Majority’s creation of an additional element for surrender not found in the plain and unambiguous statutory language or Hawaii’s clear case law is misplaced.
Second, the Majority’s ultimate conclusion, that the State does not own the seawall pursuant to surrender but is responsible for its maintenance and repair pursuant to implied dedication, leads to an unfair result: the Gold Coast property owners maintain ownership of the seawall that protects their private property while the State must foot the bill for its repair and upkeep. Under the Majority’s analysis, the State would not even be able to tear down the seawall if it decides, for instance, that the seawall is too costly to maintain or that it is contributing to the erosion of Waikiki’s coastline.[10] Under the *482 Majority’s conclusion, the property owners reap all of the rewards, namely free property protection in perpetuity, while the public pays for this protection. This approach appears not only disparate but unjust.
The Majority responds to these concerns by asserting that the parties “may” contribute jointly to the costs for repair and maintenance. This suggestion, however, is just that and, without more, Gold Coast is under no legal obligation to “contribute” to the repairs and maintenance of the seawall. Indeed, it is hard to imagine that the members of Gold Coast would voluntarily contribute to the seawall’s repair and upkeep when they have spent the past decade arguing that such a duty, and ultimate financial obligation, lies with the State. Moreover, without describing how such a contributory system would work, or providing a calculation to determine the parties’ contributory shares, the Majority’s suggestion—that Gold Coast “may” contribute to the repair and maintenance—is likely to generate confusion at best, and further litigation at worst, as the parties attempt to resolve the issue of contributions.
V. CONCLUSION
The Majority holds that the State is responsible for the seawall. In so doing, the Majority paints an idyllic picture of the Gold Coast seawall benefitting the public as a thoroughfare that has for generations furthered the public’s recreational pleasures of “island living.” In fact, the Majority asserts that the “very core of this case” is the “preservation of access to Hawaii’s shoreline.” However, the Majority’s portrayal of the seawall glosses over the fact that it was built by property owners in order to protect their private property from a tempestuous sea, that the seawall continues to stand on private property and to serve that purpose, and that, instead of preserving access to the coastline, the seawall is likely contributing to its erosion.
As such, the Majority’s conclusion requires the public to pay for the repair and maintenance of structures that simultaneously protect private property and contribute to the chronic coastal erosion facing Waikiki beaches. Far from benefitting the general public, the Majority’s decision benefits coastal property owners, and opens the door for other private property owners to receive free services from the State for the miles of seawalls built to protect private oeeanfront development.
For this reason and the many other reasons previously enumerated, I dissent from the Majority’s conclusion that the State acquired an easement over the seawall through common law dedication. Instead, I would hold that, under the statutory framework of HRS § 264-1 and associated statutes, the seawall was neither dedicated nor surrendered to the State. As such, I would reverse the judgment of the ICA in this regard.

. The Mahele of 1848 was a land division that identified and reserved land for the king, the government, the chiefs and konohiki (agents of the chiefs), and the tenants. See Zimring, 58 Haw. at 112, 566 P.2d at 730.

. Unless otherwise indicated, citations to HRS § 264-1 are to the 2007 version of the statute.

. The full text of HRS § 264-1 (Supp. 2016) reads as follows:
HRS § 264-1. Public highways and trails.
(a) All roads, highways, alleys, streets, ways, lanes, bikeways, bridges, and all other real property highway related interests in the State, opened, laid out, subdivided, consolidated, and acquired and built by the government are declared to be public highways. Public highways are of two types:
(1) State highways, which are those lands, interests, or other real property rights, as defined above, having an alignment or possession of a real property highway related interest as established by law, subdivided and acquired in accordance with policies and procedures of the department of transportation, separate and exempt from any county subdivision ordinances, and all those under the jurisdiction of the department of transportation; and
(2) County highways, which are all other public highways.
(b) All trails, and other nonvehicular rights-of-way in the State declared to be public rights-of-ways by the Highways Act of 1892, or *472 opened, laid out, or built by the government or otherwise created or vested as nonvehicular public rights-of-way at any time thereafter, or in the future, are declared to be public trails. A public trail is under the jurisdiction of the state board of land and natural resources unless it was created by or dedicated to a particular county, in which case it shall be under the jurisdiction of that county.
(c) All highways, roads, alleys, streets, ways, bikeways, bridges, and trails in the State, opened, laid out, or built by private parties and dedicated or condemned to the public use, are declared to be public highways or public trails as follows:
(1) Dedication of public highways, roads, alleys, streets, ways, lanes, bikeways, bridges, or trails shall be by deed of conveyance naming the State as grantee in the case of a state highway, road, alley, street, way, lane, bikeway, bridge, or trail and naming the county as grantee in the case of a county highway, road, alley, street, way, lane, bike-way, bridge, or trail. The deed of conveyance shall be delivered to and accepted by the director of transportation in the case of a state highway, road, alley, street, way, lane, bikeway, or bridge, or the board of land and natural resources in the case of a state trail. In the case of a county highway, road, alley, street, way, lane, bikeway, bridge, or county trail, the deed shall be delivered to and accepted by the legislative body of a county; provided that in every case where the highway, road, alley, street, way, lane, bikeway, bridge, or county trail is constructed and completed as required by any ordinance of the county or any rule, regulation, or resolution thereof having the effect of law, the legislative body of the county shall accept the dedication of the same without exercise of discretion; and
(2) Condemnation of public highways, roads, alleys, streets, ways, lanes, bikeways, bridges, or trails initiated by the State or county pursuant to chapter 101, shall be by final order of condemnation by a court; provided that any private owner of a highway, road, alley, street, way, lane, bikeway, bridge, or trail may petition the mayor of the county in which the highway, road, alley, street, way, lane, bikeway, bridge, or trail is located to initiate condemnation proceedings if the highway, road, alley, street, way, lane, bikeway, bridge, or trail is part of a public road, ownership has not been exercised by limiting use or access, or the State or county has provided some form of maintenance to the highway, road, alley, street, way, lane, bikeway, bridge, or trail in the interest of the public; provided further that a private owner may only petition the mayor of a county after the dissolution of the roads commission established by Act 194, Session Laws of Hawaii 2016; provided further that in every case where the highway, road, alley, street, way, lane, bikeway, bridge, or trail is constructed and completed as required by any ordinance of the county or any rule, regulation, or resolution thereof having the effect of law at the time of construction and completion, the highway, road, alley, street, way, lane, bikeway, bridge, or trail shall be exempt from meeting the construction standards in place at the time of condemnation by the State or county.
(d) If a privately owned highway, road, alley, street, way, lane, bikeway, bridge, or trail is deemed to have been dedicated to or condemned by the State or county pursuant to subsection (c), the State or county shall be exempt for a period of three years from any state laws or rules adopted pursuant thereto that would require the State or county to perform construction, reconstruction, preservation, resurfacing, restoration, or rehabilitation upon it. (e) All county public highways and trails once established shall continue until vacated, closed, abandoned, or discontinued by a resolution of the legislative body of the county wherein the county highway or trail lies. All state trails once established shall continue until lawfully disposed of pursuant to the requirements of chapter 171.

. This court's interpretation of this statute and its applicability to seawalls is consistent with the common definitions of "way” and “trail," which focus on the movement of people from place to place, instead of the structure that the movement is taking place on. For instance, way is defined as "a thoroughfare used or designed for traveling or transportation from place to place." Way, Webster's Third New International Dictionary (1993). Trail is defined as "a course followed or to be followed.” Trail, Webster's Third New International Dictionary (1993).

. The Majority places special emphasis on "the importance of the common law,” and cites to a number of cases from Hawai'i and other jurisdictions to highlight this importance. While I agree with the Majority that abrogation of common law is disfavored, I also note that common law, by its nature, is meant to grow and change with the times. See In re Estate of Chun Quan Yee Hop, 52 Haw. 40, 43, 469 P.2d 183, 185 (1970) ("[Common law] does not remain in a somnolent and sedentary state. We have repeatedly maintained that '(t)he genius of the common law, upon which our jurisprudence is based, is its capacity for orderly growth.'" (quoting Lum v. Fullaway, 42 Haw. 500, 502 (1958))); Welsh v, Campbell, 41 Haw. 106, 120 (1955) (“The common law does not consist of absolute, fixed, and inflexible rules, but rather of broad and comprehensive principles based on justice, reason, and common sense.... These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require,” (quoting Miller v. Monsen, 228 Minn. 400, 37 N.W,2d 543, 547 (1949))); Territory v. Alford, 39 Haw. 460, 465 (1952) ("[Tjhe common law is not immutable but flexible and by its own principles adapts itself to varying conditions.").

, I note that The King v. Cornwell, 3 Haw. 154 (1869), does contemplate implied dedication of Kingdom highways. However, Cornwell was decided in 1869, over a dozen years before The Highways Act was enacted, which required that a government official formally accept all public highway dedications. As such, I assert that Corn-well 's holding as to implied dedication of public highways was superceded by statute.

. The distinction between a private road dedicated as a public highway and a private road with an easement dedicated to the public is blurry at best. The court in Wemple II appears to acknowledge such a distinction; however, Wemple II also acknowledges that, in effect, these two “types” of dedication have the same outcome for the owner of the easement or dedication, namely liability and responsibility for maintenance and repairs. Id. at 397, 83 P.3d at 112 ("Whether an easement exists is significant because, as this court has held, 'an owner of an easement has the right and the duty to keep it in repair. The owner of the easement is liable in damages for injuries caused by failure to keep the easement in repair.' ” (quoting Lew, 50 Haw. at 498, 443 P.2d at 144)). Since easements appear to be a subcategory within the broader category of dedications, and are subject to the same requirements and restrictions, I would clarify Wemple II to the extent that it distinguishes between the two. See Maui Ranch, 6 Haw. App. at 420-21, 724 P.2d at 123 (defining dedication as "[t]he appropriation of land, or an easement therein, by the owner, for the use of the public, and accepted for such use by or on behalf of the public” (emphasis added)); 23 Am. Jur. 2d Dedication § 1 (2017) (“[A] 'dedication' is the setting aside of land, or *477 of an interest therein, to the public use or a form of transfer by an owner to the public of a fee or lesser interest in land.” (emphasis added)); Dedication, Black's Law Dictionary (10th ed. 2014) (defining dedication as a “donation of land or creation of an easement for public use” (emphasis added)). As such, private roads dedicated as public highways and private roads with a dedicated easement to the public should be analyzed in the same way.

. The Majority cites to a number of cases to support its proposition that Hawaii courts "recognize common law implied dedication as a method of transferring interests in property to the State and have repeatedly noted that formal acceptance is not a prerequisite.” While it is true that Hawai'i courts have recognized common law implied dedication, none of the cases the Majority lists have applied implied dedication in the context of private ways or trails. See Banning, 73 Haw. at 304-11, 832 P.2d at 728-32 (declining to apply implied dedication for an accreted parcel of land); City & Cty. of Honolulu v. Boulevard Props., Inc., 55 Haw. 305, 306-07, 517 P.2d 779, 780-81 (1973) (holding that, in the context of the laying out of a subdivision of land, implied dedication can occur "when land is subdivided into building lots and streets, a plat showing such subdivision is recorded, and sales of the building lots shown on the plat are made”); Wemple II, 103 Hawai'i at 397, 83 P.3d at 112 (holding that the ICA erred in concluding that the public had an easement over the private roadway). In fact, as mentioned above, case law relied upon by the Majority expressly states that private ways or trails cannot be dedicated to the State or county without the government’s formal approval. See Maui Ranch, 6 Haw. App. at 421-22, 724 P.2d at 123 ("In the light of the provisions of Hawaii Revised Statutes (HRS) § 264-1 (1985), we hold that the doctrine of common law dedication does not convert a private roadway into a county highway ... unless it is adopted as such by resolution of the legislative body of the county.”); Wemple II, 103 Hawai'i at 393, 83 P.3d at 108 (“In the instant case, the County has not expressly accepted the private roadway as required by HRS § 264-1; therefore, the private roadway is not a county highway.”). As such, while I agree with the Majority that Hawai'i law “recognize[s] common law implied dedication as a method of transferring interests in property to the State,” I maintain that Hawai'i law does not recognize common law implied dedication with respect to private ways or trails that fall under the authority of HRS § 264-1.

. The plain and unambiguous language of HRS § 107-10 is supported by its committee report:
The purpose of the Bill is to provide that no real property or any interest therein shall be acquired by the Territory of Hawai'i or any of its agents without prior approval of the attorney general.
Your committee feels dat the acquisition of real property or any interest therein is a matter of policy and not of law. Your Committee, therefore, has amended S.B. No. 707 to require exceptions and reservations.
S. Stand. Comm. Rep. No. 195, in 1959 Senate Journal, at 693.

. It is widely accepted that seawalls "exacerbate coastal erosion and beach loss.” Lance D. Collins, Segmentation and Seawalls: Environmental Review of Hawaii's Coastal Highways in *482 the Era of the Anthropocene, 20 Haw. Bar J. 89, 90 (2016); see also Dep't of Land and Nat. Res., Hawaii Coastal Erosion Management Plan (COB-MAP) 4 ("Studies conducted at the University of Hawaii show that hardening the shoreline of Oahu where there is chronic coastal erosion causes beach narrowing and beach loss.... Beach narrowing and loss, and shoreline hardening, also severely restrict public access to state conservation lands and natural resources,”); Sophie Cocke, Walls No Match for Waves, Honolulu Star-Advertiser, Feb. 24, 2016, at A10 ("Scientists say that Hawaii’s legacy of allowing property owners to build too close to the shoreline and later erect seawalls to protect their properties has led to the loss of many of Hawaii’s beaches.”).